No. 24-1265

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

TATI ABU KING, *et al.*,

*Plaintiffs-Appellees*,

v.

GLENN YOUNGKIN, in his official capacity as Governor of the
Commonwealth of Virginia, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Virginia

**BRIEF OF APPELLANTS**

Charles J. Cooper
Haley N. Proctor
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile

JASON S. MIYARES
*Attorney General*

ERIKA L. MALEY
*Solicitor General*

KEVIN M. GALLAGHER
*Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

May 22, 2024

*Counsel for Defendants-Appellants*

TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT .................................................... 3

ISSUES PRESENTED ...................................................................... 3

STATEMENT ................................................................................... 4

    I.    Statutory and factual background ........................................... 4

    II.   Procedural background ............................................................ 8

STANDARD OF REVIEW ............................................................... 12

SUMMARY OF THE ARGUMENT ................................................. 12

ARGUMENT .................................................................................... 14

    I.    Plaintiffs' claim does not fall within the limited *Ex parte Young* exception to state sovereign immunity ........................ 14

        A.  *Ex parte Young* is inapplicable where Plaintiffs have no federal right and are not seeking an anti-suit injunction ............................................................ 17

        B.  Sovereign immunity bars the claim against the Governor and Secretary of the Commonwealth because they lack the required special relation to enforcement of the challenged law ............................. 22

        C.  Congress has foreclosed private suits for equitable enforcement of the Virginia Readmission Act ............. 29

    II.   Plaintiffs' claim is further barred by the *Pennhurst* doctrine ................................................................................ 35

i

CONCLUSION ...................................................................................... 39

CERTIFICATE OF COMPLIANCE ...................................................... 41

CERTIFICATE OF SERVICE ................................................................ 42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alabama Power Co. v. Ickes,*
302 U.S. 464 (1938)................................................................19

*Alexander v. Sandoval,*
532 U.S. 275 (2001)...............................................................30

*Armstrong v. Exceptional Child Center,*
575 U.S. 320 (2015)................................................... *passim*

*Baker v. Carr,*
369 U.S. 186 (1961)...............................................................35

*Bland v. Roberts,*
730 F.3d 368 (4th Cir. 2013)..............................................16

*Bogan v. City of Boston,*
489 F.3d 417 (1st Cir. 2007) ..............................................25

*Bragg v. West Va. Coal Ass'n,*
248 F.3d 275 (4th Cir. 2001)..............................................36

*Butler v. Thompson,*
97 F. Supp. 17 (E.D. Va. 1951) ..........................................31

*Children's Healthcare is a Legal Duty, Inc. v. Deters,*
92 F.3d 1412 (6th Cir. 1996)..............................................25

*City of S. Miami v. Governor,*
65 F.4th 631 (11th Cir. 2023) ............................................28

*Connecticut Bd. of Pardons v. Dumschat,*
452 U.S. 458 (1981)...............................................................27

*Disability Rights South Carolina v. McMaster,*
24 F.4th 893 (4th Cir. 2022) ..............................................28

*Doyle v. Hogan*,
1 F.4th 249 (4th Cir. 2021) ........................................................ 23, 24

*Ford Motor Co. v. Department of Treasury of State of Ind.*,
323 U.S. 459 (1945) ........................................................................ 14

*Gibbons v. Gibbs*,
99 F.4th 211 (4th Cir. 2024) ......................................................... 19

*Hopkins v. Hosemann*,
76 F.4th 378 (5th Cir.), *reh'g en banc granted, opinion
vacated*, 83 F.4th 312 (5th Cir. 2023) ......................................... 10

*Howell v. McAuliffe*,
292 Va. 320 (2016) ........................................................................... 6

*Industrial Servs. Grp. v. Dobson*,
68 F.4th 155 (4th Cir. 2023) ....................................................... 22, 28

*Jones v. Governor of Fla.*,
950 F.3d 795 (11th Cir. 2020) ........................................................ 4

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
666 F.3d 244 (4th Cir. 2012) .......................................................... 3

*Lewis v. Governor of Alabama*,
944 F.3d 1287 (11th Cir. 2019) ..................................................... 28

*Luther v. Borden*,
48 U.S. (7 How.) 1 (1849) ............................................................... 33

*Lytle v. Griffith*,
240 F.3d 404 (4th Cir. 2001) ......................................................... 15

*McBurney v. Cuccinelli*,
616 F.3d 393 (4th Cir. 2010) ............................................... 2, 13, 22, 23

*McConnell v. Adams*,
829 F.2d 1319 (4th Cir. 1987) ....................................................... 15

*Merritt v. Jones*,
259 Ark. 380 (1976) ....................................................................... 31

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
774 F.3d 895 (6th Cir. 2014)................................................. 1, 18, 19, 20

*Ohio Adult Parole Auth. v. Woodard*,
523 U.S. 272 (1998).......................................................... 27

*Pacific States Telephone & Telegraph Co. v. Oregon*,
223 U.S. 118 (1912)............................................................ 34

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)..................................................... *passim*

*Perry v. Beamer*,
933 F. Supp. 556 (E.D. Va. 1996) ....................................... 5, 8

*Rees v. City of Watertown*,
86 U.S. (19 Wall.) 107 (1873)............................................. 18

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997)........................................................... 15

*Rux v. Republic of Sudan*,
461 F.3d 461 (4th Cir. 2006)............................................... 22

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)................................................ 15, 21, 29

*Shell Oil Co. v. Noel*,
608 F.2d 208 (1st Cir. 1979) .............................................. 25

*South Carolina Wildlife Fed'n v. Limehouse*,
549 F.3d 324 (4th Cir. 2008).............................................. 23

*In re Stone*,
986 F.2d 898 (5th Cir. 1993) (per curiam)........................... 26

*Swint v. Chambers Cnty. Comm'n*,
514 U.S. 35 (1995)............................................................ 22

*Texas v. White*,
74 U.S. 700 (1868), *overruled on other grounds by Morgan
v. United States*, 113 U.S. 476 (1885) ............................... 33

*Trump v. D.C.*,
   141 S. Ct. 1262 (2021) ................................................................... 19

*In re Trump*,
   958 F.3d 274 (4th Cir. 2020) (en banc) .................................... 19

*In re U.S. Dep't of Educ.*,
   25 F.4th 692 (9th Cir. 2022) ........................................................ 26

*In re U.S.*,
   985 F.2d 510 (11th Cir. 1993) ...................................................... 25

*United States v. States of La., Tex., Miss., Ala., & Fla.*,
   363 U.S. 1 (1960) ............................................................................... 9

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
   535 U.S. 635 (2002) ........................................................................ 11

*Virginia Off. for Prot. & Advocacy v. Stewart (VOPA)*,
   563 U.S. 247 (2011) ............................................................... *passim*

*Waste Management Holdings, Inc. v. Gilmore*,
   252 F.3d 316 (4th Cir. 2001) ...................................................... 25

*Whole Women's Health v. Jackson*,
   595 U.S. 30 (2021) ......................................................................... 23

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ......................................................................... 15

*Williams on Behalf of J.E. v. Reeves*,
   954 F.3d 729 (5th Cir. 2020) ............................................... 38, 39

*Ex parte Young*,
   209 U.S. 123 (1908) .............................................................. *passim*

*Zito v. North Carolina Costal Resources Comm'n*,
   8 F.4th 281 (4th Cir. 2021) ......................................................... 12

**Statutes**

Act of Feb. 1, 1870, c. 12, 16 Stat. 63 ........................................ 8

vi

Act of Feb. 23, 1870, c. 19, 16 Stat. 67 ..................................................... 8

Act of July 15, 1870 ..................................................................................... 8

Act of June 22, 1868, c. 69, 15 Stat. 72 .................................................... 8

Act of June 25, 1868, c. 70, 15 Stat. 73 .................................................... 8

Act of Mar. 20, 1870, c. 39, 16 Stat. 80 .................................................... 8

Va. Code § 24.2-409 ...................................................................................... 5

Va. Code § 24.2-417 ...................................................................................... 5

Va. Code § 24.2-427 ...................................................................................... 5

Virginia Readmission Act, 16 Stat. 62 (1870) ................................. *passim*

## Other Authorities

1 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 402 (1923) ................. 32

2 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 663 (1923).................. 31

13 WILLISTON ON CONTRACTS § 37:1 (4th ed.)......................................... 32

Scott A. Mager & Elaine J. LaFlamme, *At the "Apex" of the
    Problem: Stopping the Abuse of Requests for Depositions
    of High Rankings "Apex" Executives,* 23 No. 3 Trial
    Advoc. Q. 19 (2004) ............................................................................. 26

U.S. Const. art. IV, § 4 ............................................................................... 33

Va. Const. art. II, § 1 ...................................................................... *passim*

Va. Const. art. III, § 1 (1869) ........................................................... 9, 37

Va. Const. art. III, § 14 (1830) ................................................................ 4

Va. Const. art. V, § 12 ...................................................................... 6, 27

INTRODUCTION

Sovereign immunity bars this suit. Plaintiffs brought a novel claim that the statute that readmitted Virginia to congressional representation after the Civil War, known as the Virginia Readmission Act, requires Virginia to permit nearly all felons to vote. They sued numerous state officials, including the Governor of Virginia and the Secretary of the Commonwealth.

Plaintiffs rely solely on the exception to sovereign immunity set forth in *Ex parte Young*, 209 U.S. 123 (1908). But the Virginia Readmission Act is not judicially enforceable by private parties through an *Ex parte Young* suit. The Act set forth conditions on Congress's decision to re-admit Virginia to congressional representation; it did not create individual federal rights, as the district court recognized. Plaintiffs are also not seeking an anti-suit injunction to enjoin Defendants from bringing an enforcement action against them under an allegedly preempted state law. *Armstrong v. Exceptional Child Center*, 575 U.S. 320, 326 (2015). They seek to use *Ex parte Young* as a "sword" rather than a "shield," *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014), to force Virginia itself to extend them an

1

affirmative privilege to register to vote despite their felony convictions. But Plaintiffs have no federal right to such relief, and *Ex parte Young* does not create one.

Plaintiffs' reliance on *Ex parte Young* is even more clearly deficient as to their claims against the Governor and Secretary of the Commonwealth. An *Ex parte Young* defendant must have a "'special relation'" to the challenged law and be "'clothed with some duty in regard to the enforcement'" of it. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 155–56). But the Governor and the Secretary play no role in disenfranchising felons. The disenfranchisement occurs automatically under the Virginia Constitution, and election officials are responsible for implementing it. Plaintiffs cannot sue high-level officials such as the Governor on the theory that they have a "duty to uphold the state laws" generally. *Id* at 400.

Further, Plaintiffs do not seek an injunction under the force of any *federal* law. Although their claim is nominally brought under the Virginia Readmission Act, the affirmative right they seek would have to derive, if anywhere, from state law, namely Virginia's Constitution of

1869. The *Pennhurst* doctrine therefore forecloses their claim. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

For all these reasons, Plaintiffs' Virginia Readmission Act claim is barred by Virginia's sovereign immunity. The district court's denial of that immunity should be reversed, and this case should be remanded with instructions to dismiss.

## JURISDICTIONAL STATEMENT

Plaintiffs asserted jurisdiction in the district court under 28 U.S.C. § 1331 on the ground that their claim purportedly arises under federal law. See JA36. This Court has jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine because a denial of state sovereign immunity is deemed a final decision. See *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 247 (4th Cir. 2012). The district court entered its opinion and order on March 18, 2024, JA188–211; JA 212, and Defendants timely noticed this appeal on March 26, 2024, JA213–15.

## ISSUES PRESENTED

1.    Whether the *Ex parte Young* exception to sovereign immunity is available for Plaintiffs' remaining claim, when that claim does not seek an anti-suit injunction and would not vindicate any federal right.

3

2.      Whether the Governor of Virginia and the Secretary of the Commonwealth are immune from this suit because they have no special relation to the challenged conduct.

3.      Whether *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), bars Plaintiffs' remaining claim.

## STATEMENT

### I.   Statutory and factual background

Ratified in 1971, Virginia's operative state Constitution generally extends the franchise to citizens of the United States who are at least 18 years old, meet certain residency requirements, and are registered to vote. See Va. Const. art. II, § 1. In addition, like the vast majority of States, Virginia imposes voting restrictions on convicted felons. See, *e.g.*, *Jones v. Governor of Fla.*, 950 F.3d 795, 801 n.3 (11th Cir. 2020) (noting that forty-eight States and the District of Columbia "impose some restrictions on felons' access to the franchise"). Under Article II, Section 1 of the 1971 Virginia Constitution, "[n]o person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." The Virginia Constitution has had a similar provision since at least 1830. See Va.

4

Const. art. III, § 14 (1830); *Perry v. Beamer*, 933 F. Supp. 556, 559 (E.D. Va. 1996).

"Article II, Section 1 of the Virginia Constitution automatically disqualifies all persons convicted of any felony from voting." JA188. Virginia's Department of Elections (ELECT) and general registrars implement this automatic disqualification. The Virginia State Police's Central Criminal Records Exchange sends a monthly report of all felony convictions to ELECT. JA77; see also Va. Code § 24.2-409. ELECT uses that report to update the Virginia voter registration system. JA77–78; see also Va. Code § 24.2-409. General registrars receive this information and cancel felons' voter registrations. JA78; see also Va. Code § 24.2-427(B). If a felon who has never registered to vote attempts to register, the voter registration system will prevent the general registrar from processing the application. JA78; see also Va. Code § 24.2-417.

The Governor of Virginia and the Secretary of the Commonwealth do not play a role in this felon disenfranchisement process. Instead, they play a role only in a separate, discretionary felon *re*-enfranchisement process. As part of his clemency power "to remove political disabilities consequent upon conviction for offenses," the Governor has discretion to

"restore[]" the voting rights of felons after they have been automatically disenfranchised. See Va. Const. art. V, § 12; *Howell v. McAuliffe*, 292 Va. 320, 336 n. 5 (2016).

Governor Youngkin has instituted an individualized, case-by-case review for felons' re-enfranchisement applications, consistent with the Virginia Supreme Court's interpretation of the Virginia Constitution. See *Howell*, 292 Va. at 327. That process begins with the submission of applications through the Secretary of the Commonwealth's website. JA73. Felons disclose the nature of their convictions, whether they were for violent crimes, whether they have finished serving all terms of incarceration, whether they are serving on probation or other state supervision, and whether they have paid "all fines, fees, and restitution" pertaining to the convictions. *Ibid.* The Secretary reviews each application and "works with other various state agencies to consider who may be eligible to have their rights restored." *Ibid.* Upon approval of an application, the Governor, through the Secretary, issues a personalized restoration order. JA74. This process has resulted in the re-enfranchisement of thousands of felons since Governor Youngkin took office. *Ibid.*

6

Plaintiffs are two felons who were disenfranchised under Article II, Section 1 of the Virginia Constitution by virtue of their Virginia felony convictions. Tati Abu King was convicted of felony robbery in 1988. JA74. In 2000, King violated his probation, and his sentence for felony robbery was reimposed. *Ibid.* King was again released from custody in 2011, and the Governor granted his re-enfranchisement application in 2016. *Ibid.* King was convicted of felony possession of marijuana with intent to distribute in 2018. JA75. In 2019, King was released from custody. *Ibid.* He submitted a re-enfranchisement application in 2023.[1] JA74.

Toni Heath Johnson has been convicted of the following felonies: felony uttering in 1984, felony forgery in 1988, felony attempt to utter a forged check in 1988, felony credit card theft in 1991, felony bigamy in 1999, felony identity fraud in 2002, and felony grand larceny in 2003. JA75. At some point after these convictions, she alleges that her voting rights were restored. JA32. In 2021, she was convicted of two counts of felony abuse and neglect of a child with reckless disregard for life, and three counts of felony drug possession. JA75. For those five 2021 felonies, she received suspended sentences and supervised probation. *Ibid.*

---

[1] On May 21, 2024, the Secretary denied King's application.

## II.  Procedural background

Plaintiffs brought this suit against the Governor, the Secretary of the Commonwealth, and state and local elections officials, including members of ELECT and the general registrars of the localities where King and Johnson allegedly reside (collectively, Defendants). In relevant part, Plaintiffs contended that Article II, Section 1 of the Virginia Constitution violates the Virginia Readmission Act, 16 Stat. 62 (1870).

The Virginia Readmission Act was one of a series of laws that Congress passed after the Civil War, requiring the States formerly in rebellion to adopt certain provisions in their state constitutions before Congress would seat their congressional delegations. See *Perry*, 933 F. Supp. at 559 (citing Act of June 22, 1868, c. 69, 15 Stat. 72; Act of June 25, 1868, c. 70, 15 Stat. 73; Act of Feb. 1, 1870, c. 12, 16 Stat. 63; Act of Feb. 23, 1870, c. 19, 16 Stat. 67; Act of Mar. 20, 1870, c. 39, 16 Stat. 80; Act of July 15, 1870). The acts required the States to submit their newly adopted constitutions "'to Congress for examination and approval,' after which approval by Congress and after ratification of the Fourteenth Amendment by each State, each should be 'declared entitled to

representation in Congress.'" *United States v. States of La., Tex., Miss., Ala., & Fla.*, 363 U.S. 1, 124 (1960).

Virginia adopted its post-war Constitution in 1869. Like previous constitutions, the 1869 Virginia Constitution excluded from the franchise all "[p]ersons convicted of . . . felony." Va. Const. art. III, § 1 (1869). Shortly thereafter, Congress enacted the Virginia Readmission Act, which approved the 1869 Virginia Constitution as "republican" and declared that Virginia was again "entitled to representation in the Congress of the United States." 16 Stat. 62. As one of the "fundamental conditions" of readmission, the Act provides that "the Constitution of Virginia shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the Constitution herein recognized"—specifically, the 1869 Virginia Constitution—"except as a punishment for such crimes as are now felonies at common law." 16 Stat. 63.

Although the 1869 Virginia Constitution that Congress approved, like the Commonwealth's current constitution, disenfranchised *all* felons, Plaintiffs nonetheless contend that their disenfranchisement violates the Act because their crimes of conviction were not common-law felonies.

9

They seek to enjoin Defendants "from enforcing Article II, Section 1 of the [current] Virginia Constitution" against Virginians "convicted of crimes that were not felonies at common law" in 1870. JA64–65. In practical terms, Plaintiffs ask the court to order Defendants to register them to vote despite their disqualification under Article II, Section 1. *Ibid.* They contend that this claim is actionable under 42 U.S.C. § 1983, JA54–56, and under principles of federal equity and *Ex parte Young*, JA57–59.[2]

The district court dismissed Plaintiffs' Virginia Readmission Act claim brought under Section 1983. The district court held that the Virginia Readmission Act "does not create a private right enforceable by an individual civil litigant under § 1983," because the Act "functions to impose conditions upon which Virginia legislators could participate in Congress, and it lacks language that explicitly confers any individual

---

[2] In the operative amended complaint, Plaintiffs added claims that Article II, Section 1 violates the Eighth Amendment prohibition on cruel and unusual punishment, apparently on the basis of a recent Fifth Circuit opinion that was the first and only appellate opinion to uphold such a claim and that has since been vacated. See *Hopkins v. Hosemann*, 76 F.4th 378 (5th Cir.), *reh'g en banc granted, opinion vacated*, 83 F.4th 312 (5th Cir. 2023). The district court dismissed these claims, and they are not relevant to this appeal. See JA205–11.

rights." JA202.

Nonetheless, the district court allowed the claim brought under principles of federal equity and *Ex parte Young* to proceed. The district court held that the Virginia Readmission Act claims "fall squarely within the *Ex parte Young* exception to the defendants' Eleventh Amendment immunity," because Plaintiffs' "sought-after relief is 'properly characterized as prospective,'" and seeks to enforce federal rather than state law. JA196 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The court held that the *Ex parte Young* exception applied to the Governor and the Secretary because they "may enforce the permanent disenfranchisement of certain individuals" and therefore, "on the record before the Court," they bore "a 'special relation' to the challenged law." JA197.

The district court next rejected the argument that the two Virginia Readmission Act claims "ultimately collapse into one theory . . . as a single cause of action under § 1983 that must meet the requirements of § 1983 and *Ex parte Young*." JA203. Instead, the court held that *Ex parte Young* creates a distinct cause of action that does not require any individual federal right, on the ground that "§ 1983 actions differ from

equitable preemption suits." *Ibid*. The court concluded that the Virginia Readmission Act claim "falls squarely within the doctrine of *Ex parte Young*," and thus that "the plaintiffs appropriately seek equitable relief." JA204. "[B]ecause *Ex parte Young* permits the plaintiffs to pursue their sought-after relief," the court concluded, "none of the defendants may successfully assert their Eleventh Amendment Immunity." JA189.

Defendants appeal these sovereign immunity rulings under the collateral-order doctrine.

## STANDARD OF REVIEW

This Court reviews questions of state sovereign immunity de novo. *Zito v. North Carolina Costal Resources Comm'n*, 8 F.4th 281, 284 (4th Cir. 2021).

## SUMMARY OF THE ARGUMENT

The *Ex parte Young* exception to sovereign immunity does not apply to Plaintiffs' Virginia Readmission Act claim. Sovereign immunity therefore bars the claim.

First, *Ex parte Young* does not apply here because the claim is not seeking equitable relief to prevent Defendants from violating Plaintiffs' federal constitutional or statutory rights; as the district court recognized, no individual federal right is at issue here at all. The claim also not does

12

not seek an anti-suit injunction, to protect Plaintiffs from an imminent enforcement action by Defendants under a preempted state law. Rather, Plaintiffs seek to compel Virginia to extend to them an affirmative privilege its laws do not currently afford. The claim is therefore beyond the scope of *Ex parte Young*; "the state is the real, substantial party in interest" here. *Virginia Off. for Prot. & Advocacy v. Stewart (VOPA)*, 563 U.S. 247, 255 (2011) (quotation marks omitted).

Second, the claims against the Governor and the Secretary of the Commonwealth fail for the additional reason that those defendants lack the required "special relation" to enforcement of the challenged law. *McBurney*, 616 F.3d at 399. Indeed, the Governor and Secretary have no relation at all to enforcing the felon disenfranchisement process that Plaintiffs challenge. *Ex parte Young* cannot be used to disrupt the functioning of high-level state executive officials by targeting them rather than the officials actually responsible for implementing the challenged law.

Third, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327. The district court permitted Plaintiffs'

13

remaining claim to proceed on the theory that it purports to enforce the Virginia Readmission Act. But that statute provides solely for an alternate means of enforcement—a congressional determination that Virginia has not met the conditions for continued admission of its delegation to Congress. The Virginia Readmission Act cannot be judicially enforced through a private equity action.

Finally, the source of the privilege that Plaintiffs seek ultimately does not spring from federal law at all, but rather from Plaintiffs' interpretation of an earlier state law, namely the 1869 Virginia Constitution. Efforts to force state officials to comply with state law fall outside the *Ex parte Young* exception under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

## ARGUMENT

### I. Plaintiffs' claim does not fall within the limited *Ex parte Young* exception to state sovereign immunity

Sovereign immunity bars Plaintiffs' suit. "States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant." *VOPA*, 563 U.S. at 253. This immunity "denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Department of*

14

*Treasury of State of Ind.*, 323 U.S. 459, 464 (1945). Sovereign immunity bars suits implicating the official acts of the State, even where (as here) the nominal parties are state officials. *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001); *e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996). Sovereign immunity extends not just to States, but also to their "agents and [] instrumentalities," *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997), including officials sued in their official capacities, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); see also *Lytle*, 240 F.3d at 408; *McConnell v. Adams*, 829 F.2d 1319 (4th Cir. 1987) (Virginia county registrars). Here, each of the Defendants is a state official, and Plaintiffs sued all Defendants in their official capacities. JA33–36; see p.8, *supra*. They are therefore entitled to sovereign immunity.

The Supreme Court in *Ex parte Young* recognized an exception to sovereign immunity for certain suits against state officials: a state official who "enforces [an unconstitutional state law] comes into conflict with the superior authority of [the] Constitution, and therefore is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *VOPA*, 563 U.S. at 254

(quotation marks omitted). Thus, "if an individual claims federal law immunizes him from state regulation," a court may issue an injunction against a state officer to prevent that officer from enforcing the preempted regulation against the individual. *Armstrong*, 575 U.S. at 326; see also *Bland v. Roberts*, 730 F.3d 368, 390–91 (4th Cir. 2013). But the *Ex parte Young* doctrine "is limited to that precise situation, and does not apply when the state is the real, substantial party in interest." *VOPA*, 563 U.S. at 255 (quotation marks omitted).

Plaintiffs invoke *Ex parte Young*, but this case falls outside the "precise situation" where the doctrine applies for three reasons. First, *Ex parte Young* is inapplicable because Plaintiffs neither have an underlying federal right nor are they seeking an anti-suit injunction against an anticipated enforcement action under a preempted state law. Second, two Defendants, the Governor and Secretary, lack the required special relation to Plaintiffs' claim because they play no role in the disenfranchisement of felons. Third, Congress has prescribed the remedy for violating the Virginia Readmission Act, precluding the private equitable relief Plaintiffs seek through *Ex parte Young*. Accordingly,

Virginia's sovereign immunity bars Plaintiffs' Virginia Readmission Act claim.

### A. *Ex parte Young* is inapplicable where Plaintiffs have no federal right and are not seeking an anti-suit injunction

This suit falls outside the scope of *Ex parte Young* because Plaintiffs are neither seeking to enjoin state officials from violating their individual federal rights, nor seeking an anti-suit injunction to prevent the state officials from bringing an action to enforce a preempted state law against them.

First, Plaintiffs are not seeking an injunction that would prevent state officials from prospectively violating their federal constitutional or statutory rights; they have no federal rights against felon disenfranchisement. The district court dismissed every claim in Plaintiffs' complaint except the standalone *Ex parte Young* claim invoking the Virginia Readmission Act. JA212. Plaintiffs' remaining claim does not contend that Defendants are violating any federal constitutional right; it is solely statutory. See p.8, *supra*. Further, the Virginia Readmission Act does not create any individual federal rights, as the district court correctly held. JA202. The Virginia Readmission Act "does not entitle any Virginian to vote"; rather, "the Act functions to

impose conditions upon which Virginia legislators could participate in Congress, and it lacks language that explicitly confers any individual rights." *Ibid.*

Where a suit seeks to "enjoin a state official from [purportedly] violating a federal statute . . . under *Ex parte Young*, courts must determine whether Congress intended private parties to enforce the statute by private injunction," *Michigan Corr. Org.*, 774 F.3d at 905, or "intended to preclude" the "private enforcement of [the federal statute] in the courts," *Armstrong*, 575 U.S. at 329–30. The district court erred in holding that the familiar "principles [the Supreme Court] ha[s] developed to determine whether a statute . . . is enforceable through § 1983[ ] are not transferable to the *Ex parte Young* context." JA203 (alterations in original) (citing the *dissent* in *Armstrong*, 575 U.S. at 340). *Ex parte Young* cannot be used as an end-run around the limitations on implying private rights of action: "courts of equity cannot 'create a remedy in violation of law, or even without the authority of law.'" *Michigan Corr. Org.*, 774 F.3d at 906 (quoting *Rees v. City of Watertown*, 86 U.S. (19 Wall.) 107, 122 (1873)).

The district court's contrary understanding of *Ex parte Young* is erroneous. It would "impos[e] mandatory private enforcement" of federal statutes upon Congress, and thus "significantly curtail[ Congress's] ability to guide the implementation of federal law" by "making it impossible to leave the enforcement of federal law to federal actors." *Armstrong*, 575 U.S. at 326; compare, *e.g.*, *Gibbons v. Gibbs*, 99 F.4th 211, 213, 215 (4th Cir. 2024) (source of right was First Amendment, enforced through Section 1983); see also *In re Trump*, 958 F.3d 274, 293, 296 (4th Cir. 2020) (en banc) (Wilkinson, J., dissenting) (concluding that a claim "falls outside of our equitable jurisdiction because [Plaintiffs] have not alleged 'a wrong which directly results in the violation of a legal right'") (quoting *Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938)), *cert. granted, judgment vacated sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021).

To be sure, *Ex parte Young* can also function as "an equitable anti-suit injunction." *Michigan Corr. Org.*, 774 F.3d at 906. In other words, "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong*, 575 U.S. at 326. In this context, a

plaintiff "may use *Ex parte Young* as a *shield* against the enforcement of contrary (and thus preempted) state laws." *Michigan Corr. Org.*, 774 F.3d at 906. Here, however, "the State is not threatening to sue anyone." *Ibid.*; see, *e.g.*, JA57 (Plaintiffs attributing their injury to Defendants' "overseeing, managing, and administering the voter registration system and elections for Virginia").

Plaintiffs acknowledge that their disqualification happened automatically under the Virginia Constitution. JA29. To the extent that *any* of the Defendants have any continuing role in effectuating Plaintiffs' alleged injury under Virginia law, that role would be failing to register Plaintiffs as voters. JA35–36; JA78. Thus, while Plaintiffs frame their requested relief in the negative—"enjoining Defendants from enforcing Article II, Section 1 of the Virginia Constitution," JA64—in substance, they are asking the court to compel Defendants to take the affirmative step of registering them to vote. *E.g.*, JA58. In short, Plaintiffs are not seeking "an anti-suit injunction" on the theory that state law is preempted; instead, they seek to "wield *Ex parte Young* as a cause-of-action-creating *sword*" to invalidate a provision of the Virginia Constitution. *Michigan Corr. Org.*, 774 F.3d at 906; see, *e.g.*, JA64

(seeking declaration that "Defendants' enforcement of Article II, Section 1 of the Virginia Constitution violates the Virginia Readmission Act"). Because Plaintiffs are not seeking an anti-suit injunction, and the Virginia Readmission Act confers no federal right on Plaintiffs, both Section 1983 and *Ex parte Young* are unavailable. JA202.

This defect in Plaintiffs' claim not only deprives them of a right of action, but also deprives the district court of jurisdiction and makes the *Ex parte Young* exception to sovereign immunity inapplicable. Insofar as Plaintiffs' claim does not match the "precise situation" covered by *Ex parte Young*, that route around sovereign immunity's jurisdictional bar is closed to Plaintiffs. *VOPA*, 563 U.S. at 255; *Seminole Tribe*, 517 U.S. at 73 (dismissing for want of jurisdiction where the situation presented was "sufficiently different from that giving rise to the traditional *Ex parte Young* action so as to preclude the availability of that doctrine").[3] All Defendants are thus immune from Plaintiffs' suit.

---

[3] Because *Ex parte Young* is the only asserted right of action for Plaintiffs' remaining claim, as well as the only asserted exception to sovereign immunity, questions concerning the nature of the *Ex parte Young* doctrine, and whether that doctrine applies here, are "inextricably

### B. Sovereign immunity bars the claim against the Governor and Secretary of the Commonwealth because they lack the required special relation to enforcement of the challenged law

Plaintiffs' claim against two of the Defendants, the Governor and the Secretary of the Commonwealth, does not fall within *Ex parte Young* for an additional reason: those Defendants play no role whatsoever in felon disenfranchisement or voter registration. See JA58. They therefore lack the required special relation to the challenged law.

The *Ex parte Young* exception "is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 155–56). Federal courts do not have the power "to enjoin challenged 'laws themselves'"; they have the power to enjoin

---

intertwined" with the sovereign immunity issue. *Industrial Servs. Grp. v. Dobson*, 68 F.4th 155, 166–67 (4th Cir. 2023) (exercise of pendant appellate jurisdiction is appropriate "when an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal") (quoting *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006), and *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50–51 (1995)). Thus, the Court can and should decide that Plaintiffs' claim should be dismissed for want of a right of action.

22

people from engaging in certain conduct—including enjoining state officers from enforcing particular laws. *Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021). Thus, to invoke *Ex parte Young*, Plaintiffs must show a "'special relation' between the officer being sued and the challenged statute." *McBurney*, 616 F.3d at 399, 402.

A state official has a "special relation" to the challenged law if he has "*proximity to* and *responsibility for* the challenged state action." *McBurney*, 616 F.3d at 399 (quotation marks omitted). "Without [an] enforcement duty, the officer is merely a representative of the State who cannot be sued because allowing such a suit would essentially make the State a party." *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021) (quotation marks omitted). This requirement ensures both that "the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials," and that "a federal injunction will be effective with respect to the underlying claim." *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008).

Here, felon disenfranchisement happens automatically under Virginia's Constitution—upon conviction of a felony, an individual loses his qualification to vote. See p.5, *supra*. And while there is an

23

administrative process for ensuring that individuals who are automatically disenfranchised do not appear on the voter rolls, the Governor and the Secretary have no part in it. It begins when the Criminal Records Exchange sends a monthly report of felony convictions to ELECT. See p.5, *supra*. ELECT then uses that report to update the Virginia voter registration system. See p.5, *supra*. General registrars receive this information and cancel felons' voter registrations. See p.5, *supra*. If a felon who is not registered to vote attempts to register, the voter registration system will prevent the general registrar from processing the application. See p.5, *supra*. Plaintiffs here also sued the members of ELECT and the general registrars of their localities. JA34–36.

Because the Governor and the Secretary play no role in the administrative process for disenfranchising felons, there is no remedy the Court could issue *against them* (as distinguished from the Commonwealth of Virginia) that would give Plaintiffs the relief they seek. *Doyle*, 1 F.4th at 254–55. The Court cannot enjoin the Governor and the Secretary from disqualifying Plaintiffs because Plaintiffs are already disqualified. The Court cannot enjoin them to permit Plaintiffs to register

24

because the Governor and the Secretary do not register voters. And more broadly, the Court cannot enjoin them from disenfranchising felons because the Governor and the Secretary do not disenfranchise felons.

"General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)) (quotation marks omitted). Thus, "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Ibid.* (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)).

Indeed, if generalized authority over state laws were sufficient, then state high-level executive "officials will spend an inordinate amount of time tending to pending litigation," undermining their ability to perform their duties. *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). The Governor and Secretary of the Commonwealth "have greater duties and time constraints than other" defendants, and their "time is very valuable." *In re U.S.*, 985 F.2d 510, 512 (11th Cir. 1993). Particularly

25

where, as here, Plaintiffs are seeking significant discovery, see Dist. Ct. Dkt. No. 70-1 at 2–3, naming the Governor and other high-level executives as defendants creates "tremendous potential for discovery abuse and harassment," see Scott A. Mager & Elaine J. LaFlamme, *At the "Apex" of the Problem: Stopping the Abuse of Requests for Depositions of High Rankings "Apex" Executives*, 23 No. 3 Trial Advoc. Q. 19 (2004); see also *In re Stone*, 986 F.2d 898, 904 (5th Cir. 1993) (per curiam) ("Obviously, high-ranking officials of cabinet agencies could never do their jobs if they could be subpoenaed for every case involving their agency."); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) ("[T]he executive branch's execution of the laws" would "be crippled if courts" could "unnecessarily burden [officials] with compelled depositions."). The Governor and Secretary should therefore be dismissed.

The district court held that the Governor and Secretary were not entitled to sovereign immunity "on the record before [it]," on the theory that "these defendants may enforce the permanent disenfranchisement of certain individuals." JA197. But there is nothing in the record to support that conclusion. Rather, the uncontradicted declaration of the

26

Commissioner of Elections for the Commonwealth of Virginia (JA77–78) confirmed that the Governor and Secretary have no role in effectuating disenfranchisement. Plaintiffs did not even allege otherwise. Plaintiffs alleged only that the Governor and the Secretary participate in the *restoration* of felon voting rights, pursuant to the Governor's clemency power to remove political disabilities consequent to convictions for crimes. JA33; see Va. Const. art. V, § 12.

The district court appeared to conclude that the Governor and the Secretary "enforce the permanent disenfranchisement of certain individuals" by denying their restoration applications. JA197. Plaintiffs do not challenge the process that the Governor or Secretary use to rule on restoration applications. JA64–65. And Plaintiffs do not request an order enjoining the Governor to exercise his discretionary clemency power to order their re-enfranchisement, presumably because such a remedy would lie well beyond judicial competence. See *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) (plurality); *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Instead, Plaintiffs claim that they should not have been disenfranchised in the first instance, JA58—a process in which the Governor and Secretary played

27

no role, see pp.5–6, *supra*. That the Governor could theoretically moot the case by granting Plaintiffs clemency does not make him an appropriate Defendant, any more than it would for any other challenge to a criminal conviction or the resulting political disabilities. See, *e.g.*, *City of S. Miami v. Governor*, 65 F.4th 631, 643 (11th Cir. 2023) (such a theory "'prove[s] entirely too much'" because it would transform the Governor into "'a proper party defendant under innumerable provisions of'" Virginia's code) (quoting *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1300 (11th Cir. 2019)). At a minimum, then, the Governor and the Secretary are immune from this suit and should be dismissed.

Moreover, because "[t]hese principles apply with equal force in the standing context," *Disability Rights South Carolina v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022), Plaintiffs also lack standing to pursue their claims against the Governor and the Secretary. Put differently, because the Governor and Secretary "ha[ve] no role in enforcing the law at issue, it follows that the . . . injury allegedly caused by that law is not traceable to the[m]." *Id.* at 902. The Governor and the Secretary should be dismissed on this ground, as well. See *Dobson*, 68 F.4th at 166–67

28

(permitting the Court to resolve issues "inextricably intertwined" with the issues on appeal).

## C. Congress has foreclosed private suits for equitable enforcement of the Virginia Readmission Act

Further, the *Ex parte Young* exception does not apply because Congress has foreclosed the equitable relief that Plaintiffs seek here. The district court permitted Plaintiffs' remaining *Ex parte Young* claim to proceed on the theory that it is based on a purported violation of a federal statute, the Virginia Readmission Act. JA196. But Congress provided for that statute to be enforced solely through an alternate mechanism— Congress's determination whether to continue to allow Virginia's congressional delegation. Private enforcement through an *Ex parte Young* suit is therefore unavailable.

As the court below acknowledged, the *Ex parte Young* remedy "is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 327. The court lacks jurisdiction to hear *Ex parte Young* claims outside the scope of those limitations. *Seminole Tribe*, 517 U.S. at 76. Contrary to the district court's analysis, see JA203–05, the same statutory features that led the Supreme Court in *Armstrong* to conclude that Congress had foreclosed a judge-made remedy are present here.

29

First, "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Armstrong*, 575 U.S. at 328 (quotation marks omitted). In *Armstrong*, the Medicaid Act created a "Spending Clause contract" between a State and the federal government, and the Court held that the exclusive remedy for the State's breach of that contract would be non-performance by the federal government (specifically, "withholding of Medicaid funds by the Secretary of Health and Human Services"). *Ibid.* And even though in "modern times . . . intended beneficiaries . . . can sue to enforce the obligations of *private* contracting parties," such intended beneficiaries usually have no right to sue to enforce "contracts between two governments," and the Court declined to infer from congressional *silence* that it would have permitted such an alternative in the Medicaid Act. *Id.* at 332.[4] Rather, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

---

[4] Although *Armstrong* discussed "intended beneficiaries" in the course of considering whether there is an implied right of action in the Medicaid Act, its observations about congressional intent are equally relevant to the question whether Congress intended private enforcement of a statute through an *Ex parte Young* remedy.

30

Here, too, the Virginia Readmission Act is in the nature of a contract between Virginia and Congress. 16 Stat. 62. It provides for a specific enforcement mechanism by the federal government itself. The Virginia Readmission Act provides that Virginia "is entitled to representation in the Congress of the United States" if it meets certain "conditions," including as to the franchise, that are "precedent to the representation of the State in Congress." 16 Stat. at 62, 63.

Congress is the exclusive enforcer of the conditions set forth in the Act, through its determination whether Virginia remains entitled to representation in Congress. See 2 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 663 (1923) ("A condition in a promise limits the undertaking of the promisor to perform . . . ."); *Butler v. Thompson*, 97 F. Supp. 17, 20 (E.D. Va. 1951) ("Such a matter is one peculiarly within the domain of Congress itself, since it only purports to set up a condition governing Virginia's right to admission to representation in Congress."); *Merritt v. Jones*, 259 Ark. 380, 389 (1976) ("Even if we assume that the [Arkansas Readmission] Act has some force and effect, its enforcement is in the

31

exclusive domain of Congress."). The court below simply overlooked this remedy.[5] JA204.

As in *Armstrong*, the Act is silent on other enforcement mechanisms. Further, private enforcement of the Act on the theory that individuals are "incidental beneficiaries" would have been unthinkable to Congress at the time. 1 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 402 (1923) (describing the general rule that incidental beneficiaries may not sue on a contract); 13 WILLISTON ON CONTRACTS § 37:1 (4th ed.) (describing common-law rule that "only parties in privity of contract could sue on a contract"). And courts today continue to refuse to infer that Congress intended to permit private parties to sue in federal court to enforce "contracts between two governments." *Armstrong*, 575 U.S. at 332.

---

[5] The district court curiously concluded that "defendants have not argued the presence of . . . any identifiable remedy within the text of the" Virginia Readmission Act. JA204. Defendants argued extensively that "Congress is the sole arbiter of whether Virginia has satisfied the Act's conditions, and the exclusive enforcer of those conditions." Dist. Ct. Dkt. No. 77 at 12; *id.* at 16 ("Only Congress can enforce the Act."); *ibid.* ("Congress enforces the Act by determining whether Virginia is entitled to representation in Congress.").

The second reason that the Supreme Court concluded that the *Ex parte Young* doctrine did not apply in *Armstrong* is also present here: "the judicially unadministrable nature" of the rule. *Armstrong*, 575 U.S. at 328. Here, too, Plaintiffs seek to enforce a judicially unadministrable rule. The Virginia Readmission Act records the conditions of Congress's judgment that Virginia's constitution is "republican." 16 Stat. 62; see also *Texas v. White*, 74 U.S. 700, 727 (1868), *overruled on other grounds by Morgan v. United States*, 113 U.S. 476 (1885) (Congress's "authority" to pass the Readmission Acts "was derived from the obligation of the United States to guarantee to every State in the Union a republican form of government"). And that is a quintessentially political judgment that only Congress can make. U.S. Const. art. IV, § 4; *Luther v. Borden*, 48 U.S. (7 How.) 1, 42 (1849).

Yet by asking the court to declare that Virginia has failed to comply with a "fundamental condition" of Congress's judgment readmitting it to congressional representation, Plaintiffs unavoidably invite the court to supplant Congress's judgment with its own—to hold that Virginia no longer satisfies the Act's conditions for readmission to representation in Congress and, consequently, to reject Congress's determination that

Virginia's government remains sufficiently "republican." *Pacific States Telephone & Telegraph Co. v. Oregon*, 223 U.S. 118, 137, 139 (1912) (claim that "provision in the Oregon Constitution . . . violates the provisions of the act of Congress admitting Oregon to the Union" may be "reduced" to a claim that "the prior lawful state Government [is] bereft of its lawful character" under the Guarantee Clause).

The court below concluded that the Virginia Readmission Act is judicially administrable because its terms are not "broad and nonspecific" like the provision in *Amstrong*. JA204. But judicial inability to administer a rule may arise from sources other than "broad and nonspecific" language. Adjudicating Plaintiffs' claims would require wading into political decisions that ended the Civil War and restored the rebel States to the Union more than 150 years after those decisions were made. It would be impossible for this Court to resolve Plaintiffs' claims without departing from Congress's continuing determination that Virginia has a republican form of government and is entitled to representation. It is difficult to imagine a "risk of inconsistent interpretations and misincentives" that poses a greater threat to the public interest. *Armstrong*, 575 U.S. at 329 (quotation marks omitted).

34

Indeed, that is why determining a State's republican status represents the quintessential question that is ill-suited for judicial administration. *Baker v. Carr*, 369 U.S. 186, 223 (1961).

Because Congress imposed a condition on Virginia that is enforceable by Congress alone, the district court lacks jurisdiction to provide the relief Plaintiffs seek through *Ex parte Young*.

## II.  Plaintiffs' claim is further barred by the *Pennhurst* doctrine

Finally, Plaintiffs' claim falls outside the bounds of the *Ex parte Young* exception because Plaintiffs ultimately seek to enforce a state law—the 1869 Virginia Constitution—which they claim guarantees their right to vote.

As the Supreme Court explained in *Pennhurst*, "the [*Ex parte*] *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate *federal* rights," and the Court's "decisions repeatedly have emphasized that the [*Ex parte*] *Young* doctrine rests on the need to promote the vindication of federal rights." 465 U.S. at 105 (emphasis added). At the same time, "the need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the States." *Ibid.*

35

"This need to reconcile competing interests is wholly absent . . . when a plaintiff alleges that a state official has violated *state* law." *Id.* at 106 (emphasis in original). For in that case, "the entire basis for the doctrine of [*Ex parte*] *Young* . . . disappears." *Ibid.* Such a suit "does not vindicate the supreme authority of federal law"; indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Ibid.* Accordingly, the *Ex parte Young* exception is "inapplicable in a suit against state officials on the basis of state law." *Ibid.*; see, *e.g.*, *Bragg v. West Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001) (A State's "sovereign dignity reserves to its own institutions the task of keeping its officers in line with [state] law.").

Plaintiffs' claim is ultimately based on state law. To be sure, the claim is nominally brought under a federal law, the Virginia Readmission Act. But the substantive law they seek to enforce through their requested injunction—the law that, according to their theory, requires Defendants to allow them to register to vote—is a state law, namely the 1869 Virginia Constitution. Plaintiffs undisputedly cannot vote under the current Virginia Constitution. Nor could they vote solely under the force of the

Virginia Readmission Act. As the court below recognized, the Virginia Readmission Act conferred no right on Plaintiffs. JA202. That Act simply provides that Virginia's constitution "shall never be so amended or changed as to deprive any citizen or class of citizens . . . of the right to vote who are entitled to vote by the Constitution herein recognized," *i.e.*, the 1869 Virginia Constitution. 16 Stat. 63. Thus, without a right to vote under the 1869 Virginia Constitution, Plaintiffs have no federal basis for the injunction they seek. Their claimed right to that injunction instead depends on interpreting the 1869 Virginia Constitution to give them a right to vote, notwithstanding its provision that "excluded from voting" all "[p]ersons convicted" of a "felony." Va. Const. art. III, § 1 (1869).

The problem under *Pennhurst* is that, by issuing an injunction based on that interpretation, a court would be ordering Defendants, who are state officials, to comply with an interpretation of state law, *i.e.* the 1869 Virginia Constitution. That is precisely what *Pennhurst* forbids.

The district court concluded that Plaintiffs "do not ask for" relief under the 1869 Virginia Constitution; rather, they allege that Defendants "are enforcing Article II, Section 1 of Virginia's [current] Constitution," which they contend "is in violation of a federal law's

37

'fundamental condition' that Virginia never alter its Constitution to disenfranchise citizens who could vote under Virginia's 1869 Constitution." JA196 (quoting 16 Stat. 62). But the court would not be ordering Defendants to conform their conduct to the terms of the Virginia Readmission Act. Plaintiffs did not ask the district court to enjoin Defendants from seeking to "amen[d] or chang[e]" the voting provisions of the Virginia Constitution, 16 Stat. 63, because no Defendant is seeking to do so.

The court recognized that the constitution included an exception for felons, but concluded the exception was relevant to the merits, not jurisdiction. JA196. But this analysis overlooks the fact that Plaintiffs have asked the court to order Defendants to allow them to register to vote *because* Plaintiffs purportedly "could vote under Virginia's 1869 Constitution." *Ibid.*[6] Enjoining Defendants on the ground that the

_____

[6] Because Plaintiffs in effect ask the court to require the State to extend to them the affirmative privilege of voting, their claim does more than "require the court to determine the meaning of" the 1869 Constitution. *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 739–40 (5th Cir. 2020). It requires "a judicial declaration that a state law enacted over 150 years ago remains valid and enforceable, despite any years of

current Virginia Constitution purportedly "disenfranchise[s] citizens who could vote under Virginia's 1869 Constitution" would be equivalent to enjoining Defendants to enforce the 1869 Virginia Constitution. See *ibid.* In other words, the injunction would order state officials to comply with a state law, violating *Pennhurst*.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed, and this suit should be remanded with instructions to dismiss.

Respectfully submitted,

GLENN YOUNGKIN, *et al.*

By: ___*/s/ Erika L. Maley*___
        Erika L. Maley
        *Solicitor General*

---

amendments and alterations." *Ibid.* It therefore resembles the Readmission Act claim the Fifth Circuit found to be unenforceable under the *Pennhurst* doctrine in *Williams*. Further, although *Williams* allowed a different Readmission Act claim to proceed, see *id.* at 737–39, it did not address the defects raised in Part I of this brief.

Charles J. Cooper
Haley N. Proctor
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile


May 22, 2024

JASON S. MIYARES
 *Attorney General*

KEVIN M. GALLAGHER
 *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile


*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,726 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Erika L. Maley*
Erika L. Maley

## CERTIFICATE OF SERVICE

I certify that on May 22, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Erika L. Maley*

Erika L. Maley