No. 24-1265

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

TATI ABU KING, *et al.*,

*Plaintiffs-Appellees,*

v.

GLENN YOUNGKIN, in his official capacity as Governor of the
Commonwealth of Virginia, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Virginia

**REPLY BRIEF**

Charles J. Cooper
Haley N. Proctor
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile




July 12, 2024

JASON S. MIYARES
  *Attorney General*

ERIKA L. MALEY
  *Solicitor General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION .................................................................................. 1

ARGUMENT ......................................................................................... 3

    I.    The Governor and Secretary of the Commonwealth should be dismissed ................................................................. 3

    II.   *Ex parte Young* does not apply because Plaintiffs do not seek to vindicate a federal right or prevent an unlawful enforcement action .................................................................. 9

    III.  Congress has foreclosed *Ex parte Young* actions to enforce the Virginia Readmission Act ................................... 16

        A.   Congress has foreclosed private suits for equitable relief enforcing the Virginia Readmission Act ............ 16

        B.   Courts lack jurisdiction where Congress has foreclosed private suits for equitable enforcement ..... 22

    IV.  *Pennhurst* also bars Plaintiffs' claim ................................... 25

CONCLUSION ..................................................................................... 32

CERTIFICATE OF COMPLIANCE ..................................................... 34

CERTIFICATE OF SERVICE ............................................................... 35

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................. 12, 13, 16

*Antrican v. Odom,*
290 F.3d 178 (4th Cir. 2002) ....................................................... 11, 22

*Armstrong v. Exceptional Child Center Inc.,*
575 U.S. 320 (2015) ................................................................. *passim*

*Baker v. Carr,*
369 U.S. 186 (1962) ........................................................................ 20

*Bragg v. West Va. Coal Ass'n,*
248 F.3d 275 (4th Cir. 2001) ....................................................... 27, 29

*Brunner v. Ohio Republican Party,*
555 U.S. 5 (2008) ...................................................................... 12, 13

*Butler v. Thompson,*
97 F. Supp. 17 (E.D. Va. 1951) (Dobie, J.) ....................................... 21

*Constantine v. Rectors & Visitors of George Mason Univ.,*
411 F.3d 474 (4th Cir. 2005) ....................................................... 11, 17

*Disability Rights S.C. v. McMaster,*
24 F.4th 893 (4th Cir. 2022) ............................................................. 9

*Doyle v. Hogan,*
1 F.4th 249 (4th Cir. 2021) ......................................................... 1, 2, 5

*El Paso Natural Gas Co. v. Neztsosie,*
526 U.S. 473 (1999) ........................................................................ 15

*Everett v. Schramm,*
772 F.2d 1114 (3d Cir. 1985) ........................................................... 27

*Exxon Mobil Corp. v. Allapattah Servs. Inc.*,
    545 U.S. 546 (2005) ..................................................... 18, 19

*Franks v. Ross*,
    313 F.3d 184 (4th Cir. 2002) ............................................. 11

*Green v. Mansour*,
    474 U.S. 64 (1985) ...................................................... 10, 12

*Green Valley Special Util. Dist. v. City of Schertz*,
    969 F.3d 460 (5th Cir. 2020) ............................................. 11

*Haymer v. Reeves*,
    No. 3:17-cv-404 (Sept. 14, 2021) ....................................... 21

*Howell v. McAuliffe*,
    292 Va. 320 (2016) ...................................................... 6, 7

*Industrial Servs. Grp., Inc. v. Dobson*,
    68 F.4th 155 (4th Cir. 2023) ....................................... 9, 11, 24

*JH ex rel. JD v. Henrico Cnty. Sch. Bd.*,
    326 F.3d 560 (4th Cir. 2003) ............................................. 15

*Johnson v. Governor of Fla.*,
    405 F.3d 1214 (11th Cir. 2005) (en banc) ............................... 7

*Luther v. Borden*,
    48 U.S. (7 How.) 1 (1849) ............................................... 18

*McBurney v. Cuccinelli*,
    616 F.3d 393 (4th Cir. 2010) ............................................ 3, 4

*Merritt v. Jones*,
    533 S.W.2d 497 (Ark. 1976) ............................................. 21

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
    774 F.3d 895 (6th Cir. 2014) ....................................... *passim*

*Mont v. Heintz*,
    849 F.2d 704 (2d Cir. 1988) ............................................. 27

*National Fed'n of Indep. Bus. v. Sebelius,*
567 U.S. 519 (2012) ............................................................ 19

*Papasan v. Allain,*
478 U.S. 265 (1986) ............................................................ 14

*Patchette v. Nix,*
952 F.2d 158 (8th Cir. 1991) .............................................. 27

*Pennhurst State School & Hospital v. Halderman,*
465 U.S. 89 (1984) ..................................................... *passim*

*Perry v. Beamer,*
933 F. Supp. 556 (E.D. Va.), *aff'd* 99 F.3d 1130 (4th Cir. 1996) (unpub.) ............................................................... 21

*Richardson v. Ramirez,*
418 U.S. 24 (1974) ....................................................... 21, 32

*Russell v. Jones,*
49 F.4th 507 (5th Cir. 2022) ................................................ 5

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996) ..................................................... *passim*

*Shell Oil Co. v. Noel,*
608 F.2d 208 (1st Cir. 1979) ................................................ 6

*South Carolina Wildlife Fed'n v. Limehouse,*
549 F.3d 324 (4th Cir. 2008) ............................................... 5

*United States v. Davis,*
690 F.3d 226 (4th Cir. 2012) ............................................... 7

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.,*
535 U.S. 635 (2002) ................................................... *passim*

*Virginia House of Delegates v. Bethune-Hill,*
587 U.S. 658 (2019) ............................................................ 8

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,*
386 F.3d 581 (4th Cir. 2004) ............................................. 24

iv

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
 252 F.3d 316 (4th Cir. 2001)...........................................2, 6

*Williams on behalf of J.E. v. Reeves*,
 954 F.3d 729 (5th Cir. 2020)..................................... *passim*

*Williams on behalf of J.E. v. Reeves*,
 981 F.3d 437 (5th Cir. 2020) (Jones, J., dissenting from
 denial of rehearing en banc) ............................................30

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales*,
 986 F.2d 962 (5th Cir. 1993) ............................................27

*Ex parte Young*,
 209 U.S. 123 (1908)................................................. *passim*

## Statutes

Mississippi Readmission Act, 16 Stat. 68 (1870)...................................28

Virginia Readmission Act, 16 Stat. 62 (1870)............................... *passim*

## Other Authorities

A.E. Dick Howard, *Who Belongs: The Constitution of
 Virginia and the Political Community*, 37 J. L. & Politics
 99, 113 (2022) ....................................................................31

Cong. Glob., 41st Cong., 2d Sess. 479 (Rep. Fitch)...........................18, 19

Nat'l Conf. State Legislatures, *Felon Voting Rights* (June 6,
 2024), www.ncsl.org/elections-and-campaigns/felon-
 voting-rights.......................................................................31

U.S. Const. amend. XIV, § 1...............................................................30

U.S. Const. amend. XV, § 1 ...............................................................30

Va. Const. art. V, § 12 ........................................................................6

## INTRODUCTION

Sovereign immunity bars Plaintiffs' claims because they do not fall within the limited exception recognized in *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiffs primarily contend that *Ex parte Young* encompasses *all* claims that allege an ongoing violation of federal law and seek prospective relief. See, *e.g.*, Appellees' Br. 24. But while these are necessary conditions, they are not sufficient. Plaintiffs must also seek relief from the particular state officers with a special responsibility for enforcing the challenged state law, who are capable of remedying the alleged federal violation. *Doyle v. Hogan*, 1 F.4th 249, 254–55 (4th Cir. 2021). Plaintiffs must identify a federal right they seek to vindicate or a threatened enforcement action they seek to enjoin. *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014). And, for statutory claims, they must show that the enforcement scheme Congress created allows for private equitable suits. *Armstrong v. Exceptional Child Center Inc.*, 575 U.S. 320, 326 (2015); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996). Plaintiffs fail to meet any of these requirements.

First, neither the Governor nor the Secretary has any relationship to the alleged ongoing violation of federal law: felon disenfranchisement. Plaintiffs' response confirms that the only alleged connection is the Governor's discretionary clemency power. Appellees' Br. 8. But Plaintiffs do not contend that the Governor's clemency power violates federal law, or seek to enjoin the Governor from exercising it. And as this Court has repeatedly held, the Governor's "'general authority to enforce the laws'" is insufficient. *Doyle*, 1 F.4th at 255 (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001)).  Plaintiffs have also sued the officials who implement the challenged state law: the members of Virginia's Department of Elections (ELECT) and registrars. There is no apparent reason to sue the Governor and Secretary as well, and Plaintiffs' targeting of these high-ranking executive officials is disruptive to the functioning of Virginia's government.

Second, Plaintiffs' response shows that they do not seek either to vindicate any federal rights or to prevent unlawful enforcement actions. Instead, they seek to use *Ex parte Young* as a sword to strike down a state constitutional provision under a federal statute that creates no individual rights. But they cite no precedent that has ever held *Ex parte*

*Young* applies in these circumstances. It does not. In addition, Congress foreclosed private enforcement of the Virginia Readmission Act. Instead, the law, which readmitted Virginia's representatives to Congress after the Civil War, is enforceable only by Congress itself. Plaintiffs therefore lack not only a cause of action, but also an exception to sovereign immunity. And because Plaintiffs ultimately seek to enforce compliance with *state* law, their claims are barred by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

## ARGUMENT

### I.   The Governor and Secretary of the Commonwealth should be dismissed

First, Plaintiffs' brief demonstrates that the Governor and Secretary are not proper defendants under *Ex parte Young*. As Plaintiffs admit, a state official is a proper *Ex parte Young* defendant only where the official has "*proximity to* and *responsibility for* the challenged state action.'" Appellees' Br. 41 (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)). The Governor and Secretary do not meet this standard.

The challenged state action is the *disenfranchisement* of felons under Article II, Section 1 of the Virginia Constitution. See, *e.g.*, *id.* at 1

(describing "Plaintiffs' claim [as] seeking to enjoin the defendant state officials from continuing to disenfranchise Plaintiffs"). The Governor and Secretary had no role in, let alone responsibility for, disenfranchising Plaintiffs or any other felons. Rather, felon disenfranchisement occurs automatically by operation of Virginia law. Opening Br. 5. And Plaintiffs separately sued the officials responsible for implementing felon disenfranchisement: members of ELECT and general registrars. *Ibid.*

Plaintiffs do not dispute that the Governor and Secretary play no role in felon disenfranchisement. In Plaintiffs' own words, the only relevant responsibility of the Governor and Secretary lies in "decid[ing] whether to individually *restore* disenfranchised Virginians' voting rights." Appellees' Br. 41 (emphasis added). But that discretionary clemency power does not establish any "special relation" to the challenged state action, *McBurney*, 616 F.3d at 399, because disenfranchisement and restoration are entirely distinct exercises of state power. Plaintiffs do not allege that the Governor's discretionary clemency power violates the Virginia Readmission Act or any other provision of federal law. And they do not seek to enjoin the Governor from individually restoring felons' voting rights, which is his only power under

Article II, Section 1 of the Virginia Constitution. Indeed, any such injunction would do nothing to benefit Plaintiffs, instead leaving felons without a path to restoration. Rather, Plaintiffs seek to prevent felons from being disenfranchised under Article II, Section 1 in the first place—and thus from ever needing to seek restoration from the Governor and Secretary. See JA64–65. Because the Governor and Secretary play no role in the challenged disenfranchisement process, they are not proper *Ex parte Young* defendants. *Doyle*, 1 F.4th at 254–55.

The only apparent reason to name the Governor and Secretary is to increase the disruptive impact of the litigation by targeting Virginia's highest-ranking executive officials for discovery. Plaintiffs blithely dismiss the discovery burdens that their expansive conception of *Ex parte Young* would impose as irrelevant. See Appellees' Br. 45. But *Ex parte Young*'s special relation requirement exists to protects state officials from such litigation burdens, except where the official is personally responsible for enforcing the challenged law. See, *e.g.*, *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008) (special relation requirement prevents "interfere[nce] with the lawful discretion of state officials"); *Russell v. Jones*, 49 F.4th 507, 514 (5th Cir. 2022)

("[S]overeign immunity is an immunity from *suit* (including discovery), not just liability."); see also Opening Br. 25–26.

Plaintiffs argue that the Governor and Secretary have a sufficient special relation to the challenged law because, unless they restore a felon's voting rights, they purportedly contribute to his "ongoing disenfranchisement." Appellees' Br. 44. Plaintiffs cite no support for this novel theory of the requisite special relation. And their theory proves too much: The Governor's clemency power applies to every criminal conviction, and thus under Plaintiffs' theory he would be equally responsible for the "ongoing" enforcement of every criminal statute and sentence. Va. Const. art. V, § 12. Plaintiffs' argument is simply a new twist on the rejected theory that a governor's "[g]eneral authority to enforce the laws of the state" constitutes a special relation for purposes of *Ex parte Young*. See, *e.g.*, *Waste Mgmt. Holdings*, 252 F.3d at 331 (4th Cir. 2001); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979).

Plaintiffs' argument that *Howell v. McAuliffe*, 292 Va. 320 (2016), establishes that the Governor and Secretary enforce felon disenfranchisement through their role in restoration is equally erroneous. See Appellees' Br. 42 n.9. To the contrary, *Howell* recognizes

that felon disenfranchisement applies by force of Article II, Section 1 alone. *Howell*, 292 Va. at 349. *Howell* held that Governor McAuliffe exceeded his clemency authority by ordering that no convicted felon would be "*disqualified* to vote *unless* the felon is incarcerated or serving a sentence of supervised release." *Ibid.* As the court explained, Article II, Section 1 establishes a "general rule" (that no convicted felon is qualified to vote) and an "exception to the general rule" (that the Governor may restore an individual felon's voting rights). *Ibid.* The Governor's order violated Article II, Section 1 by "invert[ing] the rule and the exception." *Ibid.* The Governor (through the Secretary) has only the clemency power to make individual, case-by-case exceptions to the rule; he has no power to alter the felon disenfranchisement rule itself.[1] *Howell*, 292 Va. at 350.

---

[1] Plaintiffs note that "the Eleventh Circuit permitted an Equal Protection claim concerning felony disenfranchisement to proceed against Florida's Governor and Secretary of State" as members of that State's Clemency Board. Appellees' Br. 42; see *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005) (en banc). But *Johnson* did not consider whether the Governor bore the special relation necessary under *Ex parte Young,* instead ruling for the state officials on other grounds. See *Johnson*, 405 F.3d at 1235. The case is not persuasive authority on issues that were never raised or litigated. *E.g.*, *United States v. Davis*, 690 F.3d 226, 250 n.29 (4th Cir. 2012).

Plaintiffs' new request that the Governor and Secretary be ordered "to provide a notice of registration eligibility" to felons does not show the requisite special relation either. Appellees' Br. 44. Plaintiffs did not mention this relief below, and these newly requested "notices" would not make any felons eligible to vote. In addition, there is no apparent reason why any such notices of eligibility would need to be issued by the Governor or Secretary, rather than by the election officials that Plaintiffs separately sued. Because the Governor and Secretary have no special relation to the challenged state law, sovereign immunity bars the claims against them.

Finally, and for the same reasons, Plaintiffs lack standing to assert their remaining claim against the Governor or Secretary. Plaintiffs' only responses unique to standing are that Defendants somehow waived standing and that it falls outside this Court's pendent appellate jurisdiction. See Appellees' Br. 45–46. But Defendants developed this argument below. See Dist. Ct. Dkt. No. 77 at 9–10 & n.4. In any event, standing is jurisdictional and cannot be waived. See *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 (2019). The standing issue is within the proper scope of the appeal because it "rest[s] on the

same specific question that will necessarily resolve . . . the Eleventh Amendment immunity issue." *Industrial Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 168 (4th Cir. 2023) (cleaned up). The question is whether the Governor and Secretary have anything to do with felon disenfranchisement such that the requisite special relation exists for Eleventh Amendment purposes and the requisite traceability exists for standing purposes. See *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022). They do not. Thus, the Governor and Secretary should be dismissed.

## II. *Ex parte Young* does not apply because Plaintiffs do not seek to vindicate a federal right or prevent an unlawful enforcement action

The claims should be dismissed for all Defendants because they do not fit within the scope of the judicially created *Ex parte Young* exception to sovereign immunity. The exception covers two basic types of claims. The first are claims to compel state officers to respect a federal right they are alleged to be violating, which are therefore actionable under 42 U.S.C. § 1983 or another federal statute. *Michigan Corr. Org.*, 774 F.3d at 906; see *Seminole Tribe*, 517 U.S. at 74 (*Ex parte Young* enables "enforcement of a particular federal right"). The second are claims to

shield the plaintiff from state enforcement suits that violate federal laws, which are actionable in equity as claims for antisuit injunctions. *Michigan Corr. Org.*, 774 F.3d at 906; see *Green v. Mansour*, 474 U.S. 64, 68 (1985) (describing *Ex parte Young* as "an exception to [the] general principle [of sovereign immunity] [for] a suit challenging the constitutionality of a state official's action in enforcing state law"); *e.g.*, *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (claim to enjoin enforcement of utility commission order). A plaintiff can proceed under *Ex parte Young* only if the plaintiff seeks to vindicate a federal right *or* to prevent an unlawful state enforcement action. *Michigan Corr. Org.*, 774 F.3d at 905.

Plaintiffs answer by pointing out that not every *Ex parte Young* action involves a claim of federal right, Appellees' Br. 26–29, and not every *Ex parte Young* action involves a threatened enforcement action, *id.* at 29–30. But that is no answer at all. It simply demonstrates that, as Defendants explained, there are two basic categories of *Ex parte Young* actions: suits involving a federal right *or* an antisuit injunction. Opening Br. 17–21.

Plaintiffs fail to cite a single decision in which the Supreme Court or this Court has held an *Ex parte Young* action can proceed outside these two circumstances. See *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005) (action to vindicate "rights under the ADA and the Rehabilitation Act"); *Franks v. Ross*, 313 F.3d 184, 191 (4th Cir. 2002) (action alleging violation of federal constitutional and statutory rights to equal protection and non-discrimination); *Antrican v. Odom*, 290 F.3d 178, 182–83 (4th Cir. 2002) (Section 1983 action alleging violation of federal statutory right to dental care); *Dobson*, 68 F.4th at 161 (action to enjoin "enforcement activities," including issuance of citations, pursuant to North Carolina's allegedly unlawful occupational safety and health plan); see also *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 472 (5th Cir. 2020) (action to prevent officials "from taking future actions to enforce an unlawful order"). Plaintiffs seek an unprecedented expansion of *Ex parte Young*.

The sole case Plaintiffs cite that does not involve a claim of federal right or an antisuit injunction is a pending out-of-circuit case that also involves a Civil War Readmission Act. See *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020). But the Fifth Circuit never

considered this question; it ruled only on whether the relief was prospective and whether the *Pennhurst* doctrine barred the claim. *Id.* at 737. And *Williams* has limited persuasive value even as to its *Pennhurst* analysis. *Infra* Part IV.

Despite their complete lack of supporting authority, Plaintiffs insist that *Ex parte Young* must be available as a route around sovereign immunity for *any* suit seeking to redress an ongoing violation of federal law to maintain the supremacy of federal law. See Appellees' Br. 27–28. But the Supreme Court has held that the Supremacy Clause is not a cause of action, nor does every action invoking the supremacy of federal law fall within *Ex parte Young*'s scope. See *Armstrong*, 575 U.S. at 327; *Green*, 474 U.S. at 68–69. That explains why the Supreme Court has not recognized an *Ex parte Young* action to redress ongoing violations of federal law in the absence of a private right or a threatened enforcement action. See, *e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001); *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008). Indeed, if suing a state officer for alleged federal violations and seeking only prospective relief "were the only two requirements needed to trigger *Ex parte Young*,

the Court's dismissals in *Sandoval* and *Brunner* make no sense." *Michigan Corr. Org.*, 774 F.3d at 905.

Plaintiffs point to language in *Verizon* stating that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need *only* conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (quotation marks omitted) (emphasis added); see Appellees' Br. 24. But this statement is not intended as a complete demarcation of all *Ex parte Young* requirements; for instance, as Plaintiffs concede, the defendant official must also have a special relation with the challenged law. See pp.3–4, *supra*. And *Verizon* itself elsewhere notes that *Ex parte Young* is not available where Congress intended "to foreclose jurisdiction under *Ex parte Young*," as in *Seminole Tribe*. *Verizon*, 535 U.S. at 647; see pp.16–24, *infra*. When read in context, the language simply means that an *Ex parte Young* analysis of sovereign immunity excludes analysis of the merits of the claim. *Verizon*, 535 U.S. at 646 (rejecting holding that a "claim could not be brought under *Ex parte Young*, because the [challenged] order was probably not inconsistent with federal law"). It is

not an exhaustive list of hurdles that an *Ex parte Young* action must clear.

In short, Plaintiffs must show that the alleged ongoing violation of federal law either deprives them of a federal right or threatens them with an unlawful enforcement action. They fail at each turn. Plaintiffs are vague as to the ongoing violation of federal law they seek to enjoin prospectively. It cannot be the act of amending Virginia's Constitution, which happened long ago. It cannot be Plaintiffs' disenfranchisement, as Plaintiffs concede that that happens automatically upon felony conviction under the Virginia Constitution. Appellees' Br. 6. Nor can it be the cancellation of Plaintiffs' voter registrations, which also happened (if at all) in the past. JA31. The only "ongoing" act is the refusal to register Plaintiffs to vote. See Appellees' Br. 25, 44. Though Plaintiffs phrase their requested relief in the negative—requesting "protection from . . . Defendants denying their registration applications," *id.* at 31— in substance they request the affirmative relief of registration. See generally *Papasan v. Allain*, 478 U.S. 265, 279 (1986) (In discerning whether relief is permissible under *Ex Parte Young*, "we look to the substance rather than to the form of the relief sought . . . .").

This relief falls outside the boundaries of *Ex parte Young* because it seeks neither to prevent an unlawful enforcement action nor vindicate a federal right. Plaintiffs make no effort to argue that their request fits the mold of an antisuit injunction. It does not; Plaintiffs are not threatened with any enforcement suit, so an antisuit injunction would provide no redress. *Michigan Corr. Org.*, 774 F.3d at 906. And, as the district court correctly held, the Virginia Readmission Act creates no individual federal right. JA202. Plaintiffs attempt to argue that this ruling was erroneous, Appellees' Br. 28–29, but they did not appeal that portion of the district court's order, *id.* at 29 n.6. Thus, for purposes of this appeal, it is established that Plaintiffs have no individual federal right to vote, and no private right of action under section 1983. *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 479–81 (1999); *JH ex rel. JD v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 567 n.5 (4th Cir. 2003).

In any event, the Virginia Readmission Act confers no federal right on Plaintiffs. Plaintiffs elide this point by arguing that the Act "*protect[s]* individual rights," without attempting to identify the source of those rights. Appellees' Br. 28 (emphasis added). But while the Act refers to a right to vote, that right comes from *state* rather than federal law. See 16

Stat. 62. As the district court held, the Readmission Act "functions to impose conditions upon which Virginia legislators could participate in Congress," and evinces no intent to "confer[] any individual rights" under federal law. JA202; see *Sandoval*, 532 U.S. at 289 (a provision protecting "rights already created" does not itself create rights).

Plaintiffs have no federal right to vindicate and no unlawful enforcement action to forestall. They cannot invoke the *Ex parte Young* exception to sovereign immunity.

### III. Congress has foreclosed *Ex parte Young* actions to enforce the Virginia Readmission Act

The district court lacked jurisdiction over Plaintiffs' claim for the additional reason that Congress, in enacting the Readmission Act, foreclosed the sort of equitable relief that forms the basis for *Ex parte Young*. Congress thus deprived the courts of jurisdiction over such an action. *Seminole Tribe*, 517 U.S. 44.

### A. Congress has foreclosed private suits for equitable relief enforcing the Virginia Readmission Act

*Ex parte Young* is not available for federal statutory claims where Congress has foreclosed private equitable actions. See *Armstrong*, 575 U.S. at 328. It has done so here.

First, Congress provided an alternative remedy from private lawsuits if Virginia failed to observe the "fundamental conditions" on its readmission: exclusion from representation in Congress. 16 Stat. 63. Plaintiffs argue that the Act "mentions no remedies at all." Appellees' Br. 52. But while the Act does not use the word "remedy," it expressly provides for congressional enforcement. It states that Virginia not altering its state Constitution in a particular manner is a "condition[]" upon which "the State of Virginia is admitted to representation in Congress." 16 Stat. 63. The Act thus expressly sets forth a remedy for violation of this provision: the expulsion of Virginia's representatives from Congress.

Plaintiffs' argument that the Act does not foreclose *Ex parte Young* suits because it has no express language doing so fails. Appellees' Br. 52. No such express language appears in the Medicaid provision in *Armstrong*. Yet the Court inferred an exclusion of private enforcement because the statute—like the Readmission Act—is a contract between the Federal Government and the State, and did not show that Congress contemplated private enforcement. *Armstrong*, 575 U.S. at 328; see, *e.g.*, *Constantine*, 411 F.3d at 490. And while the Virginia Readmission Act

was not enacted pursuant to the Spending Clause, Appellees' Br. 53 n.11, Plaintiffs fail to explain why that supports their argument. Indeed, that the Act was enacted pursuant to the Guarantee Clause weighs *against* private enforcement, because actions under that Clause are generally beyond judicial competence. *Luther v. Borden*, 48 U.S. (7 How.) 1, 42 (1849).

The Act's plain text showing it is enforceable by Congress overrides any contrary indication in the legislative history. *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 568 (2005). The excerpts Plaintiffs have cherry-picked, see Appellees' Br. 52–53, show little more than individual representatives' subjective expectations that courts could play a role in enforcement, and their statements do not evince an expectation that private parties would be able to bring equitable actions to enforce federal law against state officers in federal court. See, *e.g.*, Cong. Glob., 41st Cong., 2d Sess. 481 (Statement of Rep. Hawley) (describing a *state* court action enforcing a *state* right to vote under the 1869 Constitution).

And, as is often the case with floor debates, other representatives expressed contrary beliefs; namely, that only Congress—or only the executive branch—could enforce the fundamental conditions imposed on

Virginia. See, *e.g.*, *id.* at 479 (Rep. Fitch) ("Suppose [Virginia] shall hereafter violate any or all of these 'fundamental conditions,' what is to be done about it? . . . It would be necessary in such event to come to Congress for a remedy."); *id.* at 569 (Sen. Morton) ("If [Virginia] hereafter nullif[ies] it[s constitution], and thus prove[s] to us that [it] did not adopt it in good faith, when that time comes we will undertake to determine the character and the extent of the redress."); see also *id.* at 497 (Rep. Cox) ("What will you do if Virginia undertakes to alter her present suffrage . . . despite of these fundamental conditions? There is only one way—*vi et armis* [with force and arms]"). Plaintiffs fall victim to exactly what the Supreme Court has warned against: that investigation into legislative history often devolves into "looking over a crowd and picking out your friends." *Exxon Mobil*, 545 U.S. at 568.

Plaintiffs are also wrong that an alternative remedial scheme can foreclose an *Ex parte Young* action only when it imposes a "quite modest set of sanctions." Appellees' Br. 35 (citing *Seminole Tribe* and *Verizon*). To the contrary, *Armstrong* holds that *Ex parte Young* was foreclosed by the Secretary's ability to enforce the Medicaid Act through withholding federal funding—a virtual "gun to the head." *National Fed'n of Indep.*

*Bus. v. Sebelius*, 567 U.S. 519, 581 (2012) (op. of Roberts, C.J.); see *Armstrong*, 575 U.S. at 328. In fact, the stringency of the remedy Congress has adopted can cut in the opposite direction: Through the comparatively narrow remedy of ordering Defendants to register Plaintiffs to vote, a district judge would be declaring, in effect, that Virginia is no longer entitled to be represented in Congress.

Second, the Virginia Readmission Act is not judicially administrable. Plaintiffs respond that the Act provides "objective criteria" by which to assess Virginia's compliance. See Appellees' Br. 55. But objective criteria are not the only conditions of judicial administrability. Plaintiffs' claim puts in issue Virginia's eligibility to be represented in Congress, and that is a judgment within Congress's exclusive constitutional purview. No court could resolve Plaintiffs' claims without expressing a lack of respect due Congress's eligibility judgment or disregarding an "unusual need for unquestioning adherence" to that judgment. *Baker v. Carr*, 369 U.S. 186, 216–17 (1962).

Finally, the Acts through which the congressional delegations of the former rebel States were readmitted impose on the States obligations concerning voting, office-holding, jury service, and education—matters

that have been at the heart of civil rights litigation over the past century and more. 16 Stat. 62; see generally *Richardson v. Ramirez*, 418 U.S. 24, 52 (1974) (discussing the Readmission Acts); *Perry v. Beamer*, 933 F. Supp. 556, 559 (E.D. Va.), *aff'd* 99 F.3d 1130 (4th Cir. 1996) (unpub.). If the Acts were amenable to private enforcement, then one would expect countless suits to enforce them over the past 150 years. But Plaintiffs point to only *one* other suit: the *Williams* case, which is still in ongoing litigation in the district court to determine whether it must be dismissed for fundamental jurisdictional flaws. Mot. to Dismiss Am. Compl., ECF No. 66, in *Haymer v. Reeves*, No. 3:17-cv-404 (Sept. 14, 2021); see *infra* Part IV.

Apart from *Williams*, Defendants are aware of only two other private enforcement attempts, both of which failed on the ground (in part) that enforcement was "in the exclusive domain of Congress." *Merritt v. Jones*, 533 S.W.2d 497, 502 (Ark. 1976); *Butler v. Thompson*, 97 F. Supp. 17, 20 (E.D. Va. 1951) (Dobie, J.). Plaintiffs urge the Court to disregard these rulings, Appellees' Br. 54, n.12, but that simply highlights that Plaintiffs' claims are unprecedented in the 150-year history of the Readmission Acts.

## B. Courts lack jurisdiction where Congress has foreclosed private suits for equitable enforcement

Plaintiffs also argue that the Court should not resolve the question whether Congress has foreclosed private enforcement of the Readmission Act, on the ground that it goes solely to the merits rather than Defendants' immunity. See Appellees' Br. 47–50. Plaintiffs are mistaken. The "same general principle" governs the question "whether a remedy should be created" and the question "whether the Eleventh Amendment bar should be lifted." *Seminole Tribe,* 517 U.S. at 74. This Court and the Supreme Court thus routinely ascertain whether Congress has foreclosed private equitable enforcement to determine whether an action falls within the *Ex parte Young* exception to sovereign immunity. See, *e.g.*, *Verizon*, 535 U.S. at 647; *Antrican*, 290 F.3d at 185, 190.

Plaintiffs point again to *Verizon*'s holding that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." 535 U.S. at 646; see Appellees' Br. 49–50. But Defendants are not raising "the merits" here; the "merits" question is whether Virginia's current Constitution violates the Readmission Act because it disenfranchises felons who enjoyed a right to vote under

Virginia's 1869 Constitution.[2] Rather, Defendants raise the question whether Congress has foreclosed an *Ex parte Young* suit. *Verizon* answered that same question in the *very next paragraph* after it announced that it would not reach "the merits." 535 U.S. at 647 (holding that Congress displayed no "intent to foreclose jurisdiction under *Ex parte Young* . . . [by adopting an] exclusive remedial scheme").

Although Plaintiffs acknowledge that the existence of a "detailed remedial scheme" for enforcement "suggest[s] *Ex parte Young* does not apply here" under *Seminole Tribe*, Appellees' Br. 33–34, they would treat *Armstrong*'s inquiry into whether a statute "implicitly precludes private enforcement" as distinct, *Armstrong*, 575 U.S. at 328; see Appellees' Br.

---

[2] Defendants note that Plaintiffs repeatedly misconstrue the Readmission Act in their discussions of the merits, asserting that Act "restrict[s] lawful disenfranchisement to convictions for crimes that were felonies at common law in 1870." Appellees' Br. 13; see *id.* at 21, 28–29, 36, 55–56. The Act says no such thing. It imposes a condition that the Virginia Constitution "shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the Constitution herein recognized" (the 1869 Virginia Constitution), except for "felonies at common law." 16 Stat. 63. Thus, by its plain terms, the Act applies only to amendments that would disenfranchise those entitled to vote under the 1869 Virginia Constitution. The current Virginia Constitution does not do so, because the 1869 Virginia Constitution that Congress approved also automatically disenfranchised *all* convicted felons. Opening Br. 9.

46–47. It is not. *Seminole Tribe*, 517 U.S. at 74. *Armstrong* cites *Verizon* and *Seminole Tribe* as the source of the rule it applies. *Armstrong*, 575 U.S. at 327–28. *Armstrong* merely confirms that plaintiffs seeking to enforce a statute that precludes private enforcement lack a cause of action as well as a path around sovereign immunity. And even if this Court were to view the cause of action inquiry as distinct, it should reach the question because it is so closely related to the immunity inquiry as to be indistinguishable from it. See *Dobson*, 68 F.4th at 166–67.

Finally, Plaintiffs argue that Defendants failed to present this argument in the district court. See Appellees' Br. 47 n.10. That is incorrect. Defendants connected the implications of congressional intent for Plaintiffs' cause of action to their immunity. Dist. Ct. Dkt. No. 77 at 7–8 & n.3; see also *id.* at 11–13 (developing administrability problems further). In any event, the district court squarely ruled on the question whether congressional intent precludes the *Ex parte Young* claim, JA204, and Defendants are entitled to challenge that decision on appeal. See, *e.g.*, *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 604 (4th Cir. 2004) ("Because the question . . . was decided by the district court, that issue is properly before [this Court] on appeal.").

## IV.  *Pennhurst* also bars Plaintiffs' claim

Plaintiffs recognize that, under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), they may not use *Ex parte Young* to enforce *state* law. Appellees' Br. 37. Yet that is what they seek to do. Although they ostensibly bring their challenge under the Virginia Readmission Act, they claim that Article II, Section 1 is unlawful because it disenfranchises more felons from voting than the 1869 Virginia Constitution. By enjoining Article II, Section 1 under the Virginia Readmission Act, therefore, a court would be ordering Defendants to comply with the 1869 Virginia Constitution. Plaintiffs' claim thus violates *Pennhurst*.

Plaintiffs misconstrue this argument as an "assertion that *Pennhurst* bars a federal court from interpreting state law along the way to enforcing federal law through an action under *Ex parte Young*." Appellees' Br. 37. Defendants assert no such thing, and nowhere "concede" that their claim calls only for an *interpretation* of state law. *Id.* at 37–38. Rather, *Pennhurst* applies because Plaintiffs effectively ask this Court to *enforce* a state law.

The Virginia Readmission Act is a unique type of federal statute from a unique time in American history. Again, it readmitted Virginia's elected representatives to the United States Congress on the condition that Virginia not change its constitution to create additional restrictions on the state right to vote—a condition that the United States Congress has exclusive authority to enforce. Opening Br. 8–9; see p.23 n.2, *supra*. But the Act itself does not entitle anyone to vote, as the district court held. JA202. The decision over who may vote remains with Virginia, subject to Congress's potential enforcement of the Act's conditions. 16 Stat. 62. To order the relief that Plaintiffs seek, therefore, a court could not rely on the terms of the Virginia Readmission Act. Nor could the court simply interpret the 1869 Virginia Constitution. The court would need to *rely* on the provisions of that constitution to issue the requested injunction, since those provisions are the only source of law Plaintiffs invoke that purportedly entitles them to vote.

No federal statute at issue in Plaintiffs' cited cases shares this unique structure. To the extent the cases deal with federal statutes at all, the statutes created cooperative-federalism programs, where States set standards under a federal statute that are treated as extensions of

federal law. See *Everett v. Schramm*, 772 F.2d 1114, 1115, 1119 (3d Cir. 1985); *Mont v. Heintz*, 849 F.2d 704, 706, 710 (2d Cir. 1988). Otherwise, the cases simply recognize that state law is the source of liberty interests protected by the Federal Constitution, a proposition not at issue here. See *Patchette v. Nix*, 952 F.2d 158, 162 (8th Cir. 1991); *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 965 (5th Cir. 1993).

That leaves *Bragg*, which held that *Pennhurst* barred a claim under the Surface Mining Control and Reclamation Act (SMCRA). *Bragg v. West Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001). That statute, "rather than asking the States to enforce the federal law, . . . invited the States to create their own laws" that "would be of 'exclusive' force in the regulation of surface mining within their borders." *Ibid*. As Plaintiffs note, the result might have been different had there been "an explicit incorporation of State law into federal law." *Ibid*. But SMCRA left the regulation of surface mining to the States, just as the Virginia Readmission Act leaves the regulation of voting to Virginia. As in *Bragg*, then, *Pennhurst* bars an *Ex parte Young* action to enforce the state provision.

Plaintiffs close with an extended discussion of the Fifth Circuit's decision in *Williams*. See Appellees' Br. 38–40. That decision is of course not binding on this Court. Nor did it consider the other problems with Plaintiffs' *Ex parte Young* claim discussed herein. See Parts I–III, *supra*. Even as to *Pennhurst*, *Williams* is less supportive than Plaintiffs assert. The plaintiffs there brought a claim under the Mississippi Readmission Act, specifically its condition that the State not amend its constitution "to deprive any citizen or class of citizens . . . of the school rights and privileges secured by" the 1868 Mississippi Constitution. 16 Stat. 68 (1870). Those plaintiffs requested declarations "that Section 201 of the Mississippi Constitution [regarding public schools] . . . violat[ed] the [Mississippi] Readmission Act," and that certain requirements of the 1868 Mississippi Constitution "remain legally binding on the Defendants." *Williams*, 954 F.3d at 734 (quotation marks omitted). The Fifth Circuit held that the second declaration would violate *Pennhurst* but allowed the plaintiffs to pursue the first. *Id.* at 739.

That decision was half-right. In rejecting the second requested declaration, the Fifth Circuit correctly explained that the plaintiffs had "ask[ed] the court to identify which *state* law is binding upon state

officials, making a judicial declaration that a state law enacted over 150 years ago remains valid and enforceable, despite many years of amendments and alterations." *Id.* at 740 (emphasis altered). Because, under *Pennhurst*, a federal court cannot be the arbiter of state law, it did not matter that the Mississippi Readmission Act had approved the educational provisions of the 1868 Mississippi Constitution, just as the Virginia Readmission Act approved the voting provisions of the 1869 Virginia Constitution. For as "[o]ther circuits," including this one, "have similarly held," "the federal government's approval of a state law does not automatically transform that law into a federal mandate." *Id.* at 741 (citing *Bragg*). That reasoning is equally applicable here.

As to the first requested declaration—that the current Mississippi Constitution violated the Mississippi Readmission Act—the court held that the plaintiffs "d[id] not ask the court to compel compliance with state law *qua* state law." *Id.* at 740 (quotation marks omitted). Yet this declaration, though worded differently from the one the court rejected, would have the same effect. The plaintiffs alleged that the existing Mississippi Constitution violated the Mississippi Readmission Act because it differed from the state constitution that the Act had approved.

See *id.* at 733. Thus, the declaration would compel state officials to comply with state law.

The Fifth Circuit thus resolved the same issue in different ways. Plaintiffs emphasize the latter holding, but they cannot escape the former. And it is the former holding that correctly applies *Pennhurst*. However Plaintiffs phrase their requested relief, because that relief would effectively require state officials to comply with the provisions of a prior state constitution, it violates *Pennhurst*. See *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 438 (5th Cir. 2020) (Jones, J., dissenting from denial of rehearing en banc).

\* \* \*

Finally, though arguing that the merits are not before this Court, Plaintiffs nonetheless discuss the merits at some length. Defendants therefore briefly respond to some of those assertions here. Plaintiffs insinuate that felon disenfranchisement under the current Virginia Constitution is racially discriminatory. But Plaintiffs chose to bring no claim of racial discrimination, although the Fourteenth and Fifteenth Amendments prohibit denying the right to vote based on race. U.S. Const. amend. XIV, § 1; U.S. Const. amend. XV, § 1. Nor could they bring such

a claim. Virginia ratified its current Constitution in 1971 without a shred of discriminatory intent, and Plaintiffs' complaint does not even allege otherwise. See, *e.g.*, A.E. Dick Howard, *Who Belongs: The Constitution of Virginia and the Political Community*, 37 J. L. & Politics 99, 113 (2022) ("Both by mandates and aspirations, today's Virginia Constitution seeks to define the political community to make fairness, justice, and inclusiveness signposts on the path to achieving a government 'for the common benefit.'").

Plaintiffs' contention that Virginia has "the country's most restrictive" felon disenfranchisement is also erroneous. See Appellees' Br. 6. Forty-eight States disenfranchise felons to some extent; none limit disenfranchisement to crimes that were common-law felonies in 1870. Nat'l Conf. State Legislatures, *Felon Voting Rights* (June 6, 2024), www.ncsl.org/elections-and-campaigns/felon-voting-rights. And in Virginia, felons may apply for re-enfranchisement to the Governor, through the Secretary of the Commonwealth. Hundreds of thousands of felons have been re-enfranchised through this discretionary process, including Plaintiff King, after prior convictions. JA74. Governor Youngkin has re-enfranchised thousands of felons since 2022. *Ibid.*

Further, Plaintiffs do not dispute that, under the Fourteenth Amendment, States may disenfranchise felons without offering *any* option for restoration. *Richardson v. Ramirez*, 418 U.S. 24 (1974).

Plaintiffs' novel Readmission Act suit is beyond the scope of *Ex parte Young*, and thus barred by sovereign immunity. It should be dismissed.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed, and this suit should be remanded with instructions to dismiss.


Respectfully submitted,

GLENN YOUNGKIN, *et al.*

By: _____/s/ Erika L. Maley_____
         Erika L. Maley
         *Solicitor General*

Charles J. Cooper
Haley N. Proctor
John D. Ramer
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600 – Telephone
(202) 220-9601 – Facsimile


July 12, 2024

JASON S. MIYARES
  *Attorney General*

KEVIN M. GALLAGHER
  *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-5315 – Telephone
(804) 371-0200 – Facsimile


*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,415 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

/s/ Erika L. Maley

Erika L. Maley

## CERTIFICATE OF SERVICE

I certify that on July 12, 2024, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Erika L. Maley
Erika L. Maley