**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1265

TATI ABU KING; TONI HEATH JOHNSON,

        Plaintiffs – Appellees,

and

BRIDGING THE GAP IN VIRGINIA,

        Plaintiff,

v.

GLENN YOUNGKIN, in his official capacity as Governor of the Commonwealth of Virginia; KELLY GEE, in her official capacity as Secretary of the Commonwealth of Virginia; JOHN O'BANNON, in his official capacity as Chairman of the State Board ofElections for the Commonwealth of Virginia; ROSALYN R. DANCE, in her official capacity as Vice Chair of the State Board of Elections for the Commonwealth of Virginia; GEORGIA ALVIS-LONG, in her official capacity as Secretary of the State Board of Elections for the Commonwealth of Virginia; DONALD W. MERRICKS, in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia; MATTHEW WEINSTEIN, in his official capacity as a member of the State Board of Elections for the Commonwealth of Virginia; SUSAN BEALS, in her official capacity as Commissioner of the Department of Elections for the Commonwealth of Virginia; ERIC SPICER, in his official capacity as the General Registrar of Fairfax County, Virginia; and SHANNON WILLIAMS, in her official capacity as the General Registrar of Smyth County, Virginia,

        Defendants – Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., Senior District Judge. (3:23-cv-00408-JAG)

Argued: September 24, 2024            Decided: December 5, 2024

―――――――――

Before NIEMEYER, GREGORY, and HEYTENS, Circuit Judges.

―――――――――

Affirmed in part and reversed in part by published opinion. Judge Heytens wrote the opinion, which Judge Niemeyer and Judge Gregory joined.

―――――――――

**ARGUED:** Kevin Michael Gallagher, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellants. Brittany Blueitt Amadi, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellees. **ON BRIEF:** Jason S. Miyares, Attorney General, Erika L. Maley, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Charles J. Cooper, Haley N. Proctor, John D. Ramer, COOPER & KIRK, PLLC, Washington, D.C., for Appellants. Vishal Agraharkar, Eden Heilman, ACLU FOUNDATION OF VIRGINIA, Richmond, Virginia; Jared Fletcher Davidson, New Orleans, Louisiana, Benjamin L. Berwick, PROTECT DEMOCRACY PROJECT, Watertown, Massachusetts; L. Alyssa Chen, Washington, D.C., Robert Kingsley Smith, Jason H. Liss, Robert Donoghue, Boston, Massachusetts, Nicholas Werle, Matthew Wollin, WILMER CUTLER PICKERING HALE AND DORR LLP, New York, New York, for Appellees.

―――――――――

TOBY HEYTENS, Circuit Judge:

Under *Ex parte Young*, 209 U.S. 123 (1908), suits that would otherwise be barred by a State's sovereign immunity may proceed when a plaintiff seeks forward-looking relief to halt an ongoing violation of federal law. The plaintiffs here claim the felon disenfranchisement provision in Virgina's constitution conflicts with federal law, and they seek an injunction preventing various state officials from enforcing that provision against them. We hold that the portion of the plaintiffs' complaint that is before us meets the requirements of the *Ex parte Young* doctrine and that the district court correctly declined to dismiss it based on sovereign immunity. But we also conclude that two of the 10 defendants—the Governor of Virginia and the Secretary of the Commonwealth—must be dismissed because they lack enforcement responsibility for the challenged state action. We thus affirm the district court's order in part and reverse it in part.

I.

Plaintiffs Tati Abu King and Toni Heath Johnson cannot register to vote in Virginia because the state constitution forbids them from doing so. In 2018, King was convicted of felony drug possession. In 2021, Johnson was convicted of several felonies, including drug possession, drug distribution, and child endangerment. These convictions triggered a provision of Virginia's constitution that says "[n]o person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." Va. Const. art. II, § 1.

King and Johnson claim their inability to register to vote violates the Virginia Readmission Act, an 1870 federal statute that allowed the Commonwealth to regain its

3

representation in Congress after the Civil War. The Act begins by noting "the people of Virginia have framed and adopted" a post-Civil War constitution—the Constitution of 1869. Pub. L. No. 41-10, 16 Stat. 62 (1870). It then imposes various requirements and restrictions on Virginia, including limits on the Commonwealth's ability to change the 1869 Constitution. 16 Stat. 63. The limitation at issue states:

> [T]he Constitution of Virginia shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the Constitution herein recognized, except as a punishment for such crimes as are now felonies at common law, whereof they shall have been duly convicted under laws equally applicable to all the inhabitants of said State.

*Id.*

In 2023, King, Johnson, and two other plaintiffs who are not before us sued eight election officials, the Governor of Virginia, and the Secretary of the Commonwealth (collectively, defendants) in federal district court. Among other relief, the complaint seeks an injunction barring the defendants "from enforcing" the Commonwealth's felony disenfranchisement rule against people "convicted of crimes that were not felonies at common law when the Virginia Readmission Act was enacted." JA 64–65.

The defendants moved to dismiss the complaint, asserting—as relevant here—that sovereign immunity bars this suit. The district court dismissed three of the complaint's four counts for failure to state a claim on which relief can be granted. But the court rejected the defendants' sovereign immunity argument, permitting one count based on the Virginia Readmission Act to go forward.

4

The defendants appealed the district court's order declining to dismiss the remaining count of the complaint on sovereign immunity grounds. We have jurisdiction under the collateral order doctrine. See *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–45 (1993). "[T]he existence of sovereign immunity is a question of law that we review de novo." *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002).

II.

The Eleventh Amendment and the broader principles of federalism it reflects generally prevent private parties from suing a State without its consent. See, *e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 10 (1890). In addition, "[s]uits against state officials in their official capacity" are "treated as suits against the State" and are barred by sovereign immunity to the extent they seek monetary relief. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "But there is also a well-settled corollary—associated with *Ex parte Young*—that allows suits for declaratory or injunctive relief against state officers in their official capacities." *Gibbons v. Gibbs*, 99 F.4th 211, 214 (4th Cir. 2024) (quotation marks removed). This appeal turns on whether King's and Johnson's claim based on the Virginia Readmission Act falls within the *Ex parte Young* doctrine.

On first view, the answer appears easy. The Supreme Court has said: "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations and quotation marks removed). The relevant count alleges that the defendants are violating

5

federal law by preventing King and Johnson from registering to vote and seeks an injunction to prevent the defendants from continuing to do so. This case thus appears to satisfy the Supreme Court's "straightforward inquiry." *Id.*

The defendants insist matters are not so simple, offering three reasons why they are all immune from suit. Like the district court, we are unpersuaded.

A.

The defendants' lead argument is that the *Ex parte Young* doctrine is inapplicable because King and Johnson have not brought a type of suit to which that doctrine applies. The defendants maintain that an *Ex parte Young* action is permitted in two and only two circumstances: those where plaintiffs seek either (1) "to enjoin state officials from violating their individual federal rights" or (2) "an anti-suit injunction to prevent the state officials from bringing an action to enforce a preempted state law against them." Appellants' Br. 17. The defendants argue this case falls within neither bucket because "the Virginia Readmission Act does not create any individual federal rights" and "the State is not threatening to sue anyone." *Id.* at 17, 20 (quotation marks removed).

We disagree. As the defendants conceded at oral argument, neither the Supreme Court nor this one has ever held that the *Ex parte Young* doctrine is so limited. See Oral Arg. 2:13–:49; see also *Antrican v. Odom*, 290 F.3d 178, 185–86, 190–91 (4th Cir. 2002) (permitting an action seeking to require defendants to comply with a provision of the Medicaid Act to proceed under *Ex parte Young* without asking whether the defendants were violating any of the plaintiffs' individual rights).

6

Instead, the defendants quote *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011), for the proposition that relief under *Ex parte Young* is available only in a "precise situation." See, *e.g.*, Appellants' Br. 16, 21 (quoting *Stewart*, 563 U.S. at 255). But the *Stewart* Court did not hold that *Ex parte Young* was limited to the two scenarios the defendants identify, nor is there any conflict between this case and *Stewart*. Instead, *Stewart* instructs that there is no sovereign immunity problem so long as "a federal court commands a state official to do nothing more than refrain from violating federal law." 563 U.S. at 255. That is precisely what King and Johnson seek here.[1]

Even if the defendants were right about the limits of *Ex parte Young*, King and Johnson *also* seek protection from a threatened enforcement action. The complaint alleges they wish to vote and would register and vote in future elections if permitted to do so. But

---

[1] The defendants also cite *Michigan Corrections Organization v. Michigan Department of Corrections*, 774 F.3d 895 (6th Cir. 2014), for the proposition that the *Ex parte Young* action is limited to the two circumstances they identify, but that decision is neither binding nor especially helpful to them. In that case, the Sixth Circuit held private plaintiffs could not use the *Ex parte Young* doctrine to evade statutory limits on their right to sue under the federal Fair Labor Standards Act. See *id.* at 899 (describing the FLSA as "preclud[ing]" the plaintiffs "from seeking injunctive or declaratory relief against" the state official they tried to sue under *Ex parte Young*). As the Sixth Circuit explained, that conclusion follows directly from the principle (discussed below in Part II(C)) that when Congress supplies its own express remedial regime for violating a federal statute, courts may—in appropriate cases—infer that Congress meant to bar resort to the *Ex parte Young* doctrine. See *id.* at 904–05. In addition, *Michigan Corrections* was decided before *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), which provides important guidance about this strand of the doctrine. For example, although the Sixth Circuit remarked that "*Ex parte Young* provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else," *Michigan Corrections*, 774 F.3d at 905, the Supreme Court has since clarified that *Ex parte Young* is a "judge-made remedy" that stems from courts' power to grant equitable relief, *Armstrong*, 575 U.S. at 326–27.

because article II, section 1 of Virginia's constitution prevents King and Johnson from being "qualified to vote," the defendants would have to deny any voter registration applications that King or Johnson submit. See Va. Code § 24.2-417 (permitting registration only for prospective voters who have "the qualifications required by the Constitution of Virginia"). And if King or Johnson somehow managed to register and cast a ballot, they would—absent the relief they seek in this lawsuit—be subject to criminal prosecution for illegal voting. See § 24.2-1004(B)(iii) (making it a Class 6 felony to vote despite "knowing that [one] is not qualified to vote").

The defendants respond that any threatened enforcement of state law against King or Johnson is insufficiently "imminent" to support an *Ex parte Young* action. Appellants' Br. 13; see Oral Arg. 4:46–6:10. That argument sounds more in justiciability (whether ripeness or standing) than sovereign immunity. See generally *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Poe v. Ullman*, 367 U.S. 497 (1961). What is more, this Court has repeatedly rejected the claim that the *Ex parte Young* doctrine contains its own imminency requirement. Rather, "[t]he requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, *even if the threat is not yet imminent*." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quotation marks removed; emphasis added). Where, as here, "an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326 (2015). No more is required.

B.

The defendants also argue they are protected by sovereign immunity because King and Johnson seek to enforce Virginia's 1869 constitution rather than federal law. Once again, we disagree.

The defendants are right that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). The *Ex parte Young* doctrine springs from the need "to permit federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." *Id.* at 105 (quotation marks removed). For that reason, "the entire basis for" allowing suit "disappears" when a plaintiff seeks to have a federal court "instruct[ ] state officials on how to conform their conduct to state law" rather than federal law. *Id.* at 106.

But we conclude King and Johnson are seeking to enforce federal law, not state law. The legal rule they ask the district court to vindicate is that the defendants may not bar them from registering to vote based on convictions for "crimes that were not felonies at common law when the Virginia Readmission Act was enacted." JA 59. If that rule exists, it comes from federal law—not state law.

The defendants assert that Virginia's 1869 constitution already "disenfranchised *all* felons," and thus insist King and Johnson fall outside the "class of citizens of the United States . . . who [were] entitled to vote" under that constitution within the meaning of the Virginia Readmission Act. Appellants' Br. 9. But that is an argument about the merits of King's and Johnson's claim, not sovereign immunity. And just as it is important not to

9

"confuse[ ] weakness on the merits with absence of Article III standing," *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011), the same is true when applying the *Ex parte Young* doctrine. See *Verizon*, 535 U.S. at 646 ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include any analysis of the merits of the claim"; instead, "[a]n *allegation* of an ongoing violation of federal law is ordinarily sufficient." (alterations and quotation marks removed)).

The possibility that the district court may (or may not) need to resolve certain questions about the history of Virginia state law to resolve King's and Johnson's claim does not change matters. Many sources of federal law—including the Due Process Clause, the Takings Clause, and 42 U.S.C. § 1983 to name just a few—build on, incorporate, or even borrow from state law without changing their essentially federal nature. See, *e.g.*, *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the [federal] Constitution."); *Wilson v. Garcia*, 471 U.S. 261, 266–80 (1985) (discussing state law borrowing under Section 1983). Determining which "classes of citizens" could vote in Virginia in 1869 and whether those groups "match" the enfranchised population under the current constitution falls well within the district court's purview. Oral Arg. 31:45–:55; see *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943) (explaining it is "the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment").

We also could not accept the defendants' *Pennhurst* argument without creating a circuit split. In *Williams v. Reeves*, the Fifth Circuit confronted a similar challenge to a state

10

constitutional provision alleged to violate the Mississippi Readmission Act. 954 F.3d 729 (5th Cir. 2020). The court rejected the argument that *Pennhurst* barred that suit because resolution of the plaintiffs' claims would "necessarily require the court to determine the meaning of" certain terms in the 1868 Mississippi constitution. *Id.* at 739–40. The Fifth Circuit explained that *Pennhurst* did not apply because the suit did not "ask the court to compel compliance with state law *qua* state law" but "to interpret the meaning of a *federal* law—the Mississippi Readmission Act—by reference to a related state law." *Id.* at 740. So too here.

C.

The defendants' last argument for why they are all immune from suit is that Congress has foreclosed equitable enforcement of the Virginia Readmission Act and thus relief under the *Ex parte Young* doctrine. As defendants correctly point out, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong*, 575 U.S. at 328. We conclude, however, that the Virginia Readmission Act creates no such limitations.[2]

The defendants rely almost exclusively on the Supreme Court's decision in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). In that case, the Court held private plaintiffs could not use *Ex parte Young* to seek an injunction requiring Idaho

---

[2] King and Johnson err in asserting this question is not within the scope of this interlocutory appeal. Both the Supreme Court and this one have considered whether Congress has foreclosed equitable enforcement in previous interlocutory appeals from denials of sovereign immunity. See *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 52, 73–76 (1996); *Antrican*, 290 F.3d at 184, 190. We do the same here.

11

officials to comply with Section 30(A) of the Medicaid Act. See *id.* at 323–34.

The *Armstrong* Court gave two reasons for its conclusion. First, Section 30(A) contained its own "remedy . . . for a State's failure to comply with" the relevant requirements—specifically, "withholding of Medicaid funds by the Secretary of Health and Human Services." *Armstrong*, 575 U.S. at 328. As the Court explained, the "express provision of one method of enforcing" Section 30(A) "suggest[ed] that Congress intended to preclude others." *Id.* (quotation marks removed).

Second, even though "[t]he provision for the Secretary's enforcement by withholding funds might not, *by itself*" have "preclude[d] the availability of equitable relief," the Court concluded it did so "when combined with the judicially unadministrable nature of § 30(A)'s text." *Armstrong*, 575 U.S. at 328. The Court found it "difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments" that are "consistent with efficiency, economy, and quality of care," while "safeguarding against unnecessary utilization of care and services." *Id.* (alterations and quotation marks removed). In the Court's view, "[e]xplicitly conferring enforcement of th[at] judgment-laden standard upon the Secretary alone" showed "Congress wanted to make the agency remedy that it provided exclusive." *Id.* (quotation marks removed).

This situation differs in every material respect. For one thing, the Virginia Readmission Act has no clear enforcement mechanism—much less a "sole" or "express" one. *Armstrong*, 575 U.S. at 328 (quotation marks removed). The defendants insist the Act implicitly provides for enforcement by expulsion of Virginia's delegation from Congress because it conditioned Virginia's readmission to Congress on compliance with the Act's

12

terms. See 16 Stat. 63 (providing "[t]hat the State of Virginia is admitted to representation in Congress as one of the States of the Union upon the following fundamental conditions"). But such an inference—even if it is a permissible one—is a far cry from the sort of "express provision of one method of enforcing a substantive rule" that "suggests that Congress intended to preclude others." *Armstrong*, 575 U.S. at 328; see also *Seminole Tribe*, 517 U.S. at 74 (citing the Indian Gaming Regulatory Act's "detailed remedial scheme" as evidence that Congress intended to preclude reliance on the *Ex parte Young* doctrine to enforce the Act's requirements).

We also see no basis for concluding the Virginia Readmission Act lacks judicially manageable standards. The Act forbids the Commonwealth from amending its state constitution "to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the Constitution herein recognized, except as a punishment for such crimes as are now felonies at common law." 16 Stat. 63. To be sure, interpreting and applying this statute may not always be easy. But "resolving whether a particular interpretation of a statute"—even an old one—"is correct represents a familiar judicial exercise, one for which there is a superabundance of tools that federal judges employ every day." *Cawthorn v. Amalfi*, 35 F.4th 245, 256 (4th Cir. 2022) (alterations and quotation marks removed). And even if the Virginia Readmission Act, properly construed, will require the district court to decide whether people with certain convictions would have been "entitled to vote" under Virginia's 1869 constitution or if a particular crime was a "felon[y] at common law," such questions also fall within the heartland of what federal courts do every day. See, *e.g.*, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1

13

(2022); *Mathis v. United States*, 579 U.S. 500 (2016) (discussing the "categorical approach" for determining whether state law crimes constitute a "violent felony" under the federal Armed Career Criminal Act); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (interpreting ERISA as requiring courts to decide whether particular "categories of relief . . . were *typically* available in equity").

The defendants protest that "[n]o court could resolve [King's and Johnson's] claims without expressing a lack of respect due to Congress's eligibility judgment." Appellants' Reply Br. 20. But that argument is simply a bootstrap because it rests on the assumption that the defendants are right that Congress has reserved for itself the primary (or even sole) power to monitor the Commonwealth's ongoing compliance with the Virginia Readmission Act. And "it goes without saying that interpreting congressional legislation is a recurring and accepted task for the federal courts." *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 (1986). We thus conclude the district court did not err in declining to dismiss the complaint's remaining count as barred by sovereign immunity.

### III.

We reach a different conclusion, however, about two defendants—the Governor of Virginia and the Secretary of the Commonwealth. As explained above, the point of the *Ex parte Young* doctrine is to permit federal courts to vindicate the supremacy of federal law by ordering state officials to stop participating in ongoing violations of that law. The ongoing violation King and Johnson allege is the refusal to permit them to register to vote. But under Virginia law, the governor and the secretary do not administer the rules restricting voter eligibility—the other defendants do. See Va. Code §§ 24.2-409, 24.2-417,

14

24.2-427. And that, in turn, means the governor and the secretary are not proper defendants here.

For a state officer to be sued under the *Ex parte Young* doctrine, "[g]eneral authority to enforce the laws of the state is not sufficient." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (quotation marks removed). Instead, a court "must find a special relation between the officer being sued and the challenged" government action. *McBurney v. Cucinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quotation marks removed). A "special relation" requires both "*proximity to* and *responsibility for* the challenged state action." *Id.* "Without this enforcement duty, the officer is merely a representative of the State who cannot be sued because allowing such a suit would essentially make the State a party." *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021) (quotation marks removed).

True, the governor and the secretary have significant responsibility in deciding whether people who have lost the right to vote because of a felony conviction should have that right restored. See Va. Const. art. II, § 1; art. V, § 12; Va. Code § 53.1-231.2 (describing the process for restoring a person's voting rights and the roles of the governor and secretary in that process). But this dispute is not about restoring voting rights that have been properly taken away. King and Johnson do not seek an order directing the governor to restore their voting rights, nor do they contend the secretary improperly denied their restoration applications. If King and Johnson are right that their disenfranchisement was unlawful from the start, they have no need to ask the governor or the secretary to restore their voting rights because those rights were never validly taken away in the first place. Cf. *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 787–88 (4th Cir. 2023) (rejecting a state official's

15

insistence that the plaintiffs needed to petition for expungement of juvenile records where the challenged "laws could not authorize or legitimize any elementary school student's arrest, charge, or delinquency adjudication in the first place").

King and Johnson nonetheless contend the governor has a special relationship with their disenfranchisement because his restoration power is mentioned in the same section of the current constitution that renders them ineligible to vote. But this Court has never recognized a "special relationship" via textual proximity or a related powers theory of *Ex parte Young*, and we decline to do so today. The constitutional provision that King and Johnson cite makes clear that neither the governor nor the secretary has any role in deciding who to disenfranchise or in executing that disenfranchisement. Instead, the process is categorical: *Every* person "who has been convicted of a felony" is *automatically* rendered ineligible to vote without any action from the governor or the secretary. Va. Const. art. II, § 1. Yes, the governor can lift that disability by later restoring a person's right to vote. But just as the power to grant pardons does not make the governor a proper defendant in a habeas action, the same is true here. See, *e.g.*, *Doyle*, 1 F.4th at 255 ("[T]he officer sued must be able to enforce, if he so chooses, *the specific law* the plaintiff challenges." (emphasis added)).

Finally, King and Johnson assert that keeping the governor and secretary as parties may be necessary to afford them full relief if they prevail. But King and Johnson never explain why this is so. Indeed, they admitted at oral argument that their alleged injuries would be addressed if the other officials sued here ceased their current process of removing those with felony convictions from the voter rolls and permitted them to register and vote.

16

Oral Arg. 19:36–21:09. We thus hold that the governor and the secretary must be dismissed on sovereign immunity grounds.[3]

\* \* \*

We express no opinion about which side has the better argument about the meaning of the Virginia Readmission Act or whether King and Johnson will ultimately be able to prove their case. We also express no view about any aspects of the district court's opinion that are not properly before us as part of this interlocutory appeal. We hold only that the district court: (1) correctly refused to dismiss the one remaining count of King's and Johnson's complaint based on sovereign immunity; but (2) should have dismissed the Governor of Virginia and the Secretary of the Commonwealth. The district court's order is thus affirmed in part and reversed in part.

*SO ORDERED*

---

[3] Any argument that the district court should have dismissed other defendants as well is forfeited because it was not presented in the defendants' opening brief. See, *e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).